# United States Bankruptcy Court
# Eastern District of Texas (Sherman)
# Adversary Proceeding #: 26−04067

*Assigned to:* Chief Judge Brenda T. Rhoades
*Lead BK Case:* 26−40061
*Lead BK Title:* PPF Gin & Warehouse, LLC and PPF Farms, LLC
*Lead BK Chapter:* 11
*Demand:* $15000000000

*Date Filed:* 06/16/26

*Nature[s] of Suit:*
14 Recovery of money/property − other
21 Validity, priority or extent of lien or other interest in property
81 Subordination of claim or interest

***Debtor***

−−−−−−−−−−−−−−−−−−−−−−−

**PPF Gin & Warehouse, LLC**
700 FM 1335
Cooper, TX 75432
Tax ID / EIN: 46−5687522

***Debtor***

−−−−−−−−−−−−−−−−−−−−−−−

**PPF Farms, LLC**
700 FM 1335
Cooper, TX 75432
Tax ID / EIN: 27−5383532

***Debtor***

−−−−−−−−−−−−−−−−−−−−−−−

**Pilgrim Land Management, LLC**
700 FM 1335
Cooper, TX 75432
Tax ID / EIN: 27−5384139

***Plaintiff***

−−−−−−−−−−−−−−−−−−−−−−−

**PPF Gin & Warehouse, LLC, *Plaintiff***
700 FM 1335
Cooper, TX 75432
Tax ID / EIN: 46−5687522

represented by

**Manolo R Santiago**
Tittle Santiago, PLLC
1125 Legacy Dr.
Suite 230
Frisco, TX 75034
863−303−7140
Fax : 214−722−0271
Email: msantiago@tittlelawpllc.com

**Brandon John Tittle**
Tittle Santiago, PLLC
1125 Legacy Dr.
Suite 230
Frisco, TX 75034
972−213−2316
Email: btittle@tittlesantiago.com

***Plaintiff***

**PPF Farms, LLC, *Plaintiff***
700 FM 1335
Cooper, TX 75432
Tax ID / EIN: 27−5383532

represented by **Manolo R Santiago**
(See above for address)

**Brandon John Tittle**
(See above for address)

***Plaintiff***

**Pilgrim Land Management, LLC, *Plaintiff***
700 FM 1335
Cooper, TX 75432
Tax ID / EIN: 27−5384139

represented by **Manolo R Santiago**
(See above for address)

**Brandon John Tittle**
(See above for address)

V.

***Defendant***

**Nutrien Ag Solutions, Inc., *Defendant***
3005 Rocky Mountain Avenue
Loveland, CO 80538

represented by **Jeff Carruth**
Condon Tobin Sladek Sparks Nerenberg, PLLC
8080 Park Lane, Suite 700
Dallas, TX 75231
214−265−3834
Fax : 214−691−6311
Email: jcarruth@condontobin.com

**Phelps Dunbar**
2000 McKinney Ave.
Ste. 2050
Dallas, TX 75201
*LEAD ATTORNEY*

***Defendant***

**Nutrien Ltd., *Defendant***
Suite 1700, 211 19th Street East
Saskatoo, SK S7K 5R6
Canada

represented by **Jeff Carruth**
(See above for address)

**Phelps Dunbar**
(See above for address)
*LEAD ATTORNEY*

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 06/16/2026 | | 1 | COMPLAINT: (14 (Recovery of money/property − other)),(21 (Validity, priority or extent of lien or other interest in property)),(81 (Subordination of claim or interest)): filed by Brandon John Tittle on behalf of PPF Gin & Warehouse, LLC, PPF Farms, LLC, Pilgrim Land Management, LLC against Nutrien Ag Solutions, Inc., Nutrien Ltd.. (Tittle, Brandon) (Entered: 06/16/2026) |
| 06/16/2026 | | | Receipt of Complaint (COURT USE ONLY)( 26−04067) [cmp,cmp] ( 350.00) filing fee. Receipt number B14545751, amount $ 350.00. (U.S. Treasury) (Entered: 06/16/2026) |

| | | | |
|---|---|---|---|
| 06/17/2026 | | 2 | Request for Issuance of Summons (Tittle, Brandon) (Entered: 06/17/2026) |
| 06/17/2026 | | 3 | Request for Issuance of Summons (Tittle, Brandon) (Entered: 06/17/2026) |
| 06/18/2026 | | 4 | Summons Issued on Nutrien Ag Solutions, Inc. Date Issued 6/18/2026, Answer Due 7/20/2026 and electronically transmitted back to the filer to be served upon the relevant party(s). (pr) (Entered: 06/18/2026) |
| 06/18/2026 | | 5 | Summons Issued on Nutrien Ltd. Date Issued 6/18/2026, Answer Due 7/20/2026 and electronically transmitted back to the filer to be served upon the relevant party(s). (pr) (Entered: 06/18/2026) |
| 06/25/2026 | | 6 | Summons Service Executed on Nutrien Ag Solutions, Inc. 6/25/2026 (Tittle, Brandon) (Entered: 06/25/2026) |
| 07/17/2026 | | 7 | Motion *to Sever Antitrust Claims from Bankruptcy Claims, Stay Limited Aspects of the Bankruptcy Claims, Preserve Disputed Nutrien Proceeds, and for Related Relief; or, Alternatively, for Separate Trials* Filed by Manolo R Santiago on behalf of PPF Farms, LLC, PPF Gin & Warehouse, LLC, Pilgrim Land Management, LLC (Attachments: # 1 Proposed Order) (Santiago, Manolo) (Entered: 07/17/2026) |
| 07/27/2026 | | 8 | ***Invalid Pleading***Certificate of Notice −− *Stipulation and Agreed Order: (I)Regarding Notice of Potential Tag−Along Action to Judicial Panel on Multidistrict Litigation; (II) Staying Nutrien Ltd.s and Nutrien Ag Solutions, Inc.s Responsive Pleading Deadlines Pending Resolution of Transfer to the MDL Action; (III) Preserving the Bankruptcy Courts Jurisdiction Over Claim Allowance, Setoff, Recoupment, Equitable Subordination, Sale Proceeds, and Distributions; and (IV) Modifying the Automatic Stay of 11 U.S.C. § 362 Only to the Limited Extent Necessary (Re: Case No. 26−40061, Docket No. 144 and Adv. No. 26−04067 Docket No. 1)* −− Filed By Jeff Carruth Filed by on behalf of Nutrien Ag Solutions, Inc., Nutrien Ltd. *(RE: related document(s)1 COMPLAINT: (14 (Recovery of money/property − other)),(21 (Validity, priority or extent of lien or other interest in property)),(81 (Subordination of claim or interest)): filed by Brandon John Tittle on behalf of PPF Gin & Warehouse, LLC, PPF Farms, LLC, Pilgrim Land Management, LLC against Nutrien Ag Solutions, Inc., Nutrien Ltd.. filed by Debtor PPF Gin & Warehouse, LLC, Plaintiff PPF Gin & Warehouse, LLC, Debtor PPF Farms, LLC, Plaintiff PPF Farms, LLC, Debtor Pilgrim Land Management, LLC, Plaintiff Pilgrim Land Management, LLC).* (Carruth, Jeff)Modified on 7/29/2026 (pr). (Entered: 07/27/2026) |
| 07/27/2026 | | | Proposed Pre−Trial Order RE: 8 Certificate of Notice (Adversary) UPLOADED 2026−07−27 16:17 (Entered: 07/27/2026) |
| 07/29/2026 | | | Proposed Agreed Order or Judgment Submitted Prior to Hearing RE: 7 Generic Motion UPLOADED 2026−07−29 17:01 (Entered: 07/29/2026) |
| 08/04/2026 | | 9 | Stipulation and Agreed Order *(RE: related document(s)1 COMPLAINT: (14 (Recovery of money/property − other)),(21 (Validity, priority or extent of lien or other interest in property)),(81 (Subordination of claim or interest)): filed by Brandon John Tittle on behalf of PPF Gin & Warehouse, LLC, PPF Farms, LLC, Pilgrim Land Management, LLC against Nutrien Ag Solutions, Inc., Nutrien Ltd.).* (lc) (Entered: 08/04/2026) |
| 08/06/2026 | | 10 | Certificate Of Mailing *(RE: related document(s)9 Stipulation and Agreed Order (RE: related document(s)1 COMPLAINT: (14 (Recovery of* |

| | | | |
|---|---|---|---|
| | | | *money/property − other)),(21 (Validity, priority or extent of lien or other interest in property)),(81 (Subordination of claim or interest)): filed by Brandon John Tittle on behalf of PPF Gin & Warehouse, LLC, PPF Farms, LLC, Pilgrim Land Management, LLC against Nutrien Ag Solutions, Inc., Nutrien Ltd.). (lc)).* Notice Date 08/06/2026. (Admin.) (Entered: 08/06/2026) |
| 08/20/2026 | | 11 | CONDITIONAL TRANSFER ORDER (CTO4) AND SIMULTANEOUS SEPARATION AND REMAND OF CERTAIN CLAIMS (sd) (Entered: 08/20/2026) |
| 08/20/2026 | | | Entry:Antitrust Claims (Counts I−II) In The Process of Being Transferred to the District of Kansas and Assigned to Judge Melgren Per Order (Doc #11) *(RE: related document(s)11 CONDITIONAL TRANSFER ORDER (CTO4) AND SIMULTANEOUS SEPARATION AND REMAND OF CERTAIN CLAIMS (sd)).*. (sd)Modified on 8/20/2026 (sd). (Entered: 08/20/2026) |

B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>PPF Gin & Warehouse, LLC, et al. | **DEFENDANTS**<br>Nutrien Ag Solutions, Inc. and<br>Nutrien Ltd. |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Tittle Santiago, PLLC<br>1125 Legacy Dr., Ste. 230, Frisco, Texas 75034<br>972-213-2316 | **ATTORNEYS** (If Known)<br>Phelps Dunbar<br>2000 McKinney Ave., Ste. 2050, Dallas, TX 75201<br>214-974-8000 |
| **PARTY** (Check One Box Only)<br>☑ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

The adversary proceeding includes causes of action for violations of the Sherman Act, Clayton Act, the Texas Free Enterprise and Antitrust Act, as well as an objection to claim.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☑ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
☑ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(h) Subordination of Claim or Interest**
☑ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| | |
|---|---|
| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand $ 15,000,000.00 |

Other Relief Sought

B1040 (FORM 1040) (12/24)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>PPF Gin & Warehouse, LLC | BANKRUPTCY CASE NO.<br>26-40061 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Eastern District of Texas | DIVISION OFFICE<br>Sherman Division | NAME OF JUDGE<br>Brenda T. Rhoades |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>06/16/2026 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Brandon Tittle | |

**INSTRUCTIONS**

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-40061** |
| | § | |
| **PPF GIN & WAREHOUSE, LLC, *et al.*,**[1] | § | **Chapter 11** |
| | § | |
| **Debtors.** | § | **Jointly Administered** |

| | | |
|---|---|---|
| | § | |
| **PPF GIN & WAREHOUSE, LLC, *et al.*,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Adversary No. 26-_____** |
| | § | |
| **NUTRIEN AG SOLUTIONS, INC. and NUTRIEN LTD.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**DEBTORS' ORIGINAL COMPLAINT AND OBJECTION TO CLAIM**

**TO THE HONORABLE BRENDA T. RHOADES**
**UNITED STATES BANKRUPTCY JUDGE:**

PPF Gin & Warehouse, LLC, PPF Farms, LLC, and Pilgrim Land Management, LLC (collectively, "Plaintiffs" or "Debtors"), as debtors and debtors-in-possession in the above-captioned jointly administered Chapter 11 cases, file this *Original Complaint and Objection to Claim* (the "Complaint") against Nutrien Ag Solutions, Inc. and Nutrien Ltd. (collectively, "Nutrien" or "Defendants"), and respectfully state as follows:

**NATURE OF THE ACTION**

1. This adversary proceeding arises from Plaintiffs' direct purchases of fertilizer and related agricultural inputs from Nutrien during a period in which prices for nitrogen, phosphorus, and

[1] The Debtors (including the last four digits of their respective taxpayer identification numbers) are: PPF Gin & Warehouse, LLC (7522); PPF Farms, LLC (3532); and Pilgrim Land Management, LLC (4139). They are all headquartered and operated from 700 FM 1335, Cooper, Texas 75432.

potassium fertilizers, collectively referred to as "NPK Fertilizers," departed sharply from historical norms, increased dramatically in 2021 and 2022, and remained elevated after temporary supply shocks publicly invoked by dominant market participants had materially subsided.

2. Plaintiffs allege that Nutrien, acting directly and in concert with other dominant fertilizer producers, participated in agreements, understandings, or coordinated conduct to fix, raise, maintain, or stabilize prices for NPK Fertilizers sold in the United States, including products sold directly to Plaintiffs.

3. The conduct alleged herein injured Plaintiffs as direct purchasers. During the relevant period, Plaintiffs purchased substantial volumes of fertilizer and related agricultural inputs directly from Nutrien and paid prices that, upon information and belief, were artificially inflated above competitive levels.

4. Nutrien was not merely an upstream market participant whose conduct affected Plaintiffs only indirectly. Nutrien was a dominant producer and supplier in highly concentrated NPK Fertilizer markets, a direct seller of crop inputs to Plaintiffs, a provider of credit and deferred-payment arrangements, a workout counterparty, and now a secured claimant in these Chapter 11 cases.

5. Nutrien's own invoices, approval requests, financing communications, account statements, forbearance documents, and proof of claim reflect the direct and continuing commercial relationship between Nutrien and Plaintiffs and demonstrate that Nutrien's pricing, credit, and collection conduct materially affected Plaintiffs' operations and now materially affects estate administration.

6. Nutrien has filed Proof of Claim No. 16-1 in the amount of $11,748,001.33 against PPF Gin & Warehouse, LLC, asserting a secured claim against estate assets. Plaintiffs dispute the amount, character, priority, secured status, and allowable extent of that claim.

7. Because Nutrien now seeks payment from estate assets based on the same commercial relationship and transactions from which Plaintiffs' affirmative claims arise, this proceeding joins antitrust claims with bankruptcy claim-objection and estate-remedy claims.

8. Plaintiffs seek relief under Section 1 of the Sherman Act, Sections 4 and 16 of the Clayton Act, the Texas Free Enterprise and Antitrust Act, 11 U.S.C. §§ 502, 506, and 558, and, in the alternative and to the extent warranted by the evidence, 11 U.S.C. § 510(c), including damages, declaratory relief, setoff, recoupment, disallowance or reduction of Claim No. 16-1, determination of the secured and unsecured portions of that claim, equitable subordination to the extent ultimately supported, and such other relief as is just and proper.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 because this proceeding arises in, arises under, and is related to the above-captioned Chapter 11 cases.

10. This is a core proceeding under 28 U.S.C. § 157(b)(2), including without limitation subsections (B), (C), and (O), because it concerns the allowance or disallowance of claims against the estates, counterclaims by the estates against a claimant, and matters affecting the adjustment of the debtor-creditor relationship.

11. This Court also has jurisdiction over Plaintiffs' federal antitrust claims pursuant to 28 U.S.C. § 1331.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1409 because this adversary proceeding arises in and relates to Chapter 11 cases pending in this district.

13. This Court has personal jurisdiction over Nutrien because Nutrien transacted business with Plaintiffs in Texas, directed product sales, credit, and collection activities toward Texas entities, and filed a proof of claim in these bankruptcy cases, thereby submitting to this Court's jurisdiction with

respect to claim-objection issues and estate counterclaims arising from the same commercial relationship.

14. Plaintiffs consent to entry of final orders and judgment by this Court as to all matters as to which the Court may constitutionally enter final orders. To the extent any claim or issue is determined to require entry of proposed findings of fact and conclusions of law, Plaintiffs request that this Court hear the matter and submit proposed findings and conclusions to the district court.

## PARTIES

15. Plaintiff PPF Gin & Warehouse, LLC is a debtor and debtor-in-possession in the above-captioned jointly administered Chapter 11 cases.

16. Plaintiff PPF Farms, LLC is a debtor and debtor-in-possession in the above-captioned jointly administered Chapter 11 cases.

17. Plaintiff Pilgrim Land Management, LLC is a debtor and debtor-in-possession in the above-captioned jointly administered Chapter 11 cases.

18. The Debtors' Chapter 11 cases are jointly administered under Case No. 26-40061. Plaintiffs are headquartered and operate from 700 FM 1335, Cooper, Texas 75432.

19. Defendant Nutrien Ltd. is, upon information and belief, a publicly traded Canadian corporation with its principal place of business in Saskatoon, Saskatchewan. Nutrien arose from the 2018 merger of Potash Corporation of Saskatchewan and Agrium Inc. Following that combination, Nutrien became one of the world's largest fertilizer companies and one of the dominant North American producers and suppliers of potash, phosphate, and nitrogen-based crop nutrients. Upon information and belief, Nutrien Ltd. exercised direct or indirect control over, or materially participated in, the conduct alleged herein.

20. Defendant Nutrien Ag Solutions, Inc. is, upon information and belief, a wholly owned subsidiary or affiliated operating arm of Nutrien Ltd., incorporated in Delaware with its principal place of business in Loveland, Colorado, and doing business in Texas, including through the Pittsburg, Texas

branch that sold and invoiced crop-input products to Plaintiffs. During the relevant period, Nutrien Ag Solutions directly sold fertilizer and related agricultural inputs to Plaintiffs and participated in the credit, invoicing, account, and collection conduct alleged herein.

21. Whenever reference is made in this Complaint to any act, deed, or transaction of any corporate defendant, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, employees, agents, subsidiaries, affiliates, or other representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

## FACTUAL ALLEGATIONS

### A. The NPK Fertilizer Markets

22. Modern commercial agriculture depends heavily on three primary macronutrients: nitrogen, phosphorus, and potassium. Fertilizers supplying those nutrients are commonly referred to as "NPK Fertilizers."

23. Nitrogen fertilizers include products such as ammonia, urea, ammonium nitrate, and urea ammonium nitrate solution. Phosphorus fertilizers include phosphate-based products such as diammonium phosphate and monoammonium phosphate. Potash fertilizers generally supply potassium, commonly in the form of potassium chloride.

24. NPK Fertilizers are essential agricultural inputs. They are widely used across crop operations, often standardized in composition and market treatment, and are critical to planting, crop development, yield, and farm profitability.

25. Beginning in or around 2021, prices for NPK Fertilizers departed from historical norms and increased dramatically across multiple product categories. Those prices remained elevated well after the transitory disruptions publicly cited by market participants had begun to subside.

26. By 2024, there were fewer than five significant producers in each major NPK Fertilizer market in North America. Upon information and belief, a small number of firms, including Nutrien,

The Mosaic Company ("Mosaic"), and CF Industries, Inc. ("CF Industries"), controlled most domestic production across the relevant fertilizer markets.

27. Upon information and belief, CF Industries, Nutrien, Koch Agronomic Services, LLC, and Yara North America, Inc. controlled approximately 80 percent of the nitrogen fertilizer market in the United States.

28. Upon information and belief, Nutrien and Mosaic controlled approximately 90 percent of the phosphorus and potash markets in the United States.

29. The concentration of these markets gave dominant producers the ability to influence prices, output, and supply conditions to the detriment of direct purchasers such as Plaintiffs.

**B. Market Structure and Conditions Conducive to Coordination**

30. Economic and antitrust principles recognize that certain market characteristics can make coordination more feasible and make parallel price and output conduct more probative. Those characteristics include concentrated supply, standardized products, high barriers to entry or expansion, transparent pricing conditions, repeated interaction among major suppliers, and the absence of meaningful fringe competition capable of disciplining price increases.

31. Upon information and belief, the relevant NPK Fertilizer markets exhibited these characteristics during the relevant period.

32. First, supply was highly concentrated. A small number of firms controlled most domestic output in the nitrogen, phosphate, and potash markets. That concentration reduced the number of firms whose conduct needed to be coordinated and increased the ability of dominant firms to monitor market outcomes.

33. Second, the products at issue were largely standardized commodity inputs. Although sold in various formulations and blends, the core nutrient products were sufficiently standardized that pricing movements and supply decisions could be compared across the market.

34. Third, barriers to entry and expansion were high. New mines, production facilities, or major expansions in fertilizer manufacturing require substantial capital, long lead times, regulatory approvals, infrastructure access, and other investments that cannot be replicated quickly in response to price spikes.

35. Fourth, the relevant markets were susceptible to signaling and observation. Public earnings calls, investor disclosures, reported benchmark prices, production commentary, and similar market communications could provide opportunities for dominant firms to communicate or observe output discipline, capacity decisions, and price expectations.

36. Fifth, the concentrated structure of the industry created opportunities for repeated interaction among key market participants through ordinary-course market observation, industry channels, and trade associations.

37. These structural features do not alone establish unlawful agreement. They do, however, make coordinated conduct more plausible and help explain how sustained supracompetitive pricing could persist across the relevant product markets.

38. In a competitive market, sustained and extraordinary price increases ordinarily would trigger meaningful supply expansion, increased output, or other competitive responses sufficient to discipline pricing over time.

39. Plaintiffs allege that the relevant NPK Fertilizer markets did not respond in that manner during the relevant period. Instead, prices remained elevated even after many of the publicly cited external shocks had begun to subside.

40. Upon information and belief, dominant producers maintained or benefited from output restraint, capacity discipline, production timing decisions, inventory management, or other conduct that helped sustain artificial scarcity and supracompetitive pricing.

41. Upon information and belief, that sustained pricing pattern was contrary to what would ordinarily be expected from independent decision-making in a competitive commodity market. Record

or near-record prices ordinarily would induce meaningful efforts to expand output, increase shipments, or otherwise capture market share. Plaintiffs allege that the persistence of elevated prices, despite easing shocks and the absence of ordinary competitive responses, constitutes a plus factor supporting the inference of coordinated conduct rather than merely lawful parallel behavior.

42. Upon information and belief, the alleged conduct was also contrary to the independent economic self-interest of market participants insofar as producers allegedly maintained or accepted market conditions that preserved tight supply and elevated prices across multiple product categories instead of competing those prices down in order to gain share. Plaintiffs allege that this is an additional plus factor supporting the plausibility of agreement.

**C. Parallel Price Increases and Market Behavior**

43. Upon information and belief, public financial disclosures by major fertilizer producers reflected strong parallel price increases beginning in 2021 across nitrogen, phosphate, and potash products.

44. Plaintiffs allege that these price increases were not fully explained by temporary supply disruptions, general inflation, or input costs alone.

45. In the nitrogen market, prices for ammonia, urea, and related products rose sharply in 2021 and 2022 and remained elevated relative to prior norms.

46. In the phosphate and potash markets, prices likewise increased sharply, declined only partially thereafter, and in certain periods rose again rather than returning to pre-spike competitive levels.

47. Upon information and belief, these parallel price movements, when viewed together with market concentration, barriers to entry, alleged supply discipline, the lack of ordinary competitive output responses, and direct purchaser overcharge injury, support the plausibility of coordinated conduct.

**D. Government and Historical Scrutiny**

48. In January 2026, the United States Department of Agriculture's Deputy Secretary publicly stated that major fertilizer producers, including Nutrien and Mosaic, had constrained supply and driven up prices paid by farmers.

49. On March 4, 2026, it was publicly reported that the United States Department of Justice, Antitrust Division, was investigating whether major fertilizer producers, including Nutrien, Mosaic, CF Industries, Koch, and Yara, coordinated or colluded to raise fertilizer prices.

50. The fertilizer industry has also been the subject of prior antitrust scrutiny, including litigation involving alleged output restriction and price coordination in potash markets.

51. Plaintiffs rely on these matters not as a substitute for proof, but as part of the broader factual context supporting the plausibility of the claims asserted herein.

**E. Plaintiffs' Direct Purchases from Nutrien**

52. Plaintiffs were direct purchasers of fertilizer and related agricultural inputs from Nutrien.

53. From at least 2020 through 2023, Nutrien sold and invoiced Plaintiffs for substantial volumes of fertilizer, seed, chemicals, and related agricultural products used in Plaintiffs' farming operations.

54. Nutrien's own invoice and delivery records reflect repeated direct sales of fertilizer and other crop-input products to Plaintiffs, including large-volume purchases of urea fertilizer, custom blends, and crop-protection products invoiced through Nutrien Ag Solutions' Pittsburg, Texas branch to Plaintiffs, including invoices addressed to PPF Farms L.L.C. Inputs, c/o Pat Pilgrim, at 700 FM 1335, Cooper, Texas 75432.

55. By way of representative example, Nutrien issued multiple June 2022 invoices for 46-0-0 urea granular fertilizer delivered to Plaintiffs in Delta County, Texas at per-ton prices of $740.00 and later $660.00. Those invoices reflected loads generally in the range of approximately 19 to 22 tons,

with invoice totals generally ranging from approximately $12,500 to approximately $15,700. *See* Representative Invoice Schedule, Exhibit A.

56. Nutrien's records further reflect repeated June 2023 urea sales to Plaintiffs at $583.00 per ton, again in load sizes of roughly 20 to 22 tons, with invoice totals generally ranging from approximately $11,600 to approximately $12,800. See Representative Invoice Schedule, Exhibit A.

57. Nutrien's corresponding packing lists from American Plant Food reflect the same delivery flow into Nutrien's Pittsburg, Texas branch and the same quantities reflected on the Nutrien invoices, providing documentary support for the volume, timing, and pricing of Plaintiffs' direct purchases. *See* Representative Invoice Schedule, Exhibit A.

58. Nutrien's records also reflect substantial non-fertilizer crop-input purchases during the same general period, including herbicides, adjuvants, and related inputs sold in large quantities to Plaintiffs. See Representative Invoice Schedule, Exhibit A.

59. These invoice and delivery records matter for at least three reasons. First, they confirm that Plaintiffs were direct purchasers from Nutrien, not remote or indirect purchasers. Second, they show repeated large-volume purchases of fertilizer products during the alleged period of supracompetitive pricing. Third, they provide transaction-level support for Plaintiffs' allegation that the debt now asserted in Claim No. 16-1 includes, at least in part, charges arising from the same allegedly inflated pricing conduct challenged in this adversary proceeding.

60. Upon information and belief, additional invoices, statements, credits, returns, and related account documentation will further show the volume of Plaintiffs' direct purchases, the pattern of pricing across time, the presence or absence of offsets and credits, and the extent to which Nutrien's asserted claim includes sums that are disputed, overstated, or otherwise subject to reduction or disallowance.

### F. Nutrien's Integrated Role as Supplier, Creditor, and Claimant

61. Nutrien's relationship with Plaintiffs extended beyond ordinary product sales.

62. Nutrien also participated in credit arrangements, deferred-payment structures, forbearance negotiations, collateral documentation, and collection efforts tied to Plaintiffs' operations.

63. Matter records reflect historical debt to Nutrien arising from crop-input purchases, forbearance arrangements concerning debt exceeding $10 million, subsequent repayment proposals, promissory note support, guaranty obligations, and collateral arrangements.

64. Nutrien's communications with Plaintiffs and related finance participants reflect a structured approval process in which product orders, invoice approvals, purchase-order limits, and financing availability were interconnected.

65. For example, communications in 2021 and 2023 reflect approval requests for hundreds of tons of fertilizer and six-figure purchase amounts, with Nutrien representatives coordinating invoice processing and product release in connection with Plaintiffs' approvals and financing sources.

66. Plaintiffs relied on Nutrien for timely delivery of critical inputs during narrow planting and growing windows. Delayed approvals, incorrect financing information, excessive pricing, or credit pressure could cause immediate operational harm, including missed planting opportunities, increased working-capital stress, and reduced ability to service debt.

67. Nutrien was therefore not merely a market participant whose conduct affected Plaintiffs only in the abstract. Nutrien was the direct seller whose prices, credit terms, finance charges, account statements, and collection posture materially affected Plaintiffs' operations and now materially affect estate administration.

**G. Nutrien's Proof of Claim and the Bankruptcy Consequences of the Alleged Overcharges**

68. On May 4, 2026, Nutrien filed Proof of Claim No. 16-1 against PPF Gin & Warehouse, LLC in the amount of $11,748,001.33, asserting a secured claim.

69. The claim materials reportedly include, among other things, a proof of claim, a December 2025 account statement, a May 2, 2019 promissory note, a May 2, 2019 security agreement,

guaranties, March 30, 2021 forbearance documents, a March 30, 2021 deed of trust, and a May 12, 2018 UCC-1.

70. The December 2025 account statement reportedly reflected a prior balance of $11,649,467.60, a finance charge of $98,533.73, no payments, no credits or returns, and an ending balance of $11,748,001.33.

71. Plaintiffs dispute the amount, enforceability, and secured status of Claim No. 16-1 to the extent it includes unlawful antitrust overcharges, unsupported finance charges, uncredited payments, duplicative amounts, improperly documented charges, or amounts otherwise unenforceable under applicable law.

72. The antitrust overcharge theory is directly relevant to claim allowance. To the extent Nutrien's asserted debt is based on prices inflated by unlawful restraints of trade, the claim is unenforceable or overstated to that extent and is subject to disallowance, reduction, setoff, recoupment, or other adjustment under applicable bankruptcy and nonbankruptcy law.

73. The same is true to the extent the claim includes charges not properly supported by the underlying agreements, account history, or collateral documentation, or seeks secured treatment beyond the value, validity, priority, perfection, or enforceable extent of any alleged lien rights.

74. Plaintiffs object both to the amount of Claim No. 16-1 and to its asserted character, priority, and secured status. To the extent Plaintiffs establish affirmative claims, offsets, recoupment rights, defenses, or reductions arising from the same commercial relationship and transactions, the allowable amount of Claim No. 16-1 must be reduced accordingly.

75. Plaintiffs further dispute the extent, validity, priority, and value support for any asserted secured status, and reserve all rights with respect to valuation, perfection, enforceability, and any deficiency or unsecured component.

76. Because Nutrien seeks payment from estate assets while Plaintiffs assert affirmative claims and defenses arising from the same integrated commercial relationship, the amount and

treatment of Claim No. 16-1 cannot be determined without resolving the overcharge, setoff, recoupment, and claim-objection issues alleged herein.

**H. Injury to Plaintiffs and the Estates**

77. As a result of the conduct alleged herein, Plaintiffs paid inflated prices for crop inputs, incurred increased operating costs, experienced increased working-capital and financing pressure, and became more heavily indebted to Nutrien.

78. Those injuries are not merely historical. Nutrien now seeks to recover from estate assets based on the same commercial relationship and underlying transactions from which Plaintiffs' affirmative claims arise.

79. Plaintiffs are therefore entitled to assert damages, defenses, setoff, recoupment, claim objections, and related equitable remedies against Nutrien in this adversary proceeding.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF SECTION 1 OF THE SHERMAN ACT
### 15 U.S.C. § 1

80. Plaintiffs incorporate by reference the allegations set forth above as though fully stated herein.

81. Upon information and belief, Nutrien entered into agreements, combinations, or conspiracies with other fertilizer producers to fix, raise, maintain, or stabilize prices for NPK Fertilizers sold in the United States.

82. The conduct alleged included, upon information and belief, output restraint, capacity discipline, inventory management, delayed expansion, production timing decisions, and other coordinated conduct that supported supracompetitive prices.

83. Plaintiffs directly purchased products affected by that conduct from Nutrien.

84. Plaintiffs allege not merely lawful parallel conduct, but parallel conduct accompanied by plus factors, including concentrated market structure, high barriers to entry and expansion, alleged

output discipline in the face of unusually high prices, persistent supracompetitive pricing despite easing shocks, and the absence of ordinary competitive supply responses. Upon information and belief, these facts support the plausibility of agreement and are inconsistent with normal competition and independent decision-making.

85. As a direct and proximate result of the unlawful conduct alleged, Plaintiffs suffered antitrust injury, including overcharges and related injury to their business and property.

86. Plaintiffs are entitled to recover all damages and relief available under law.

**COUNT II**
**DAMAGES AND EQUITABLE RELIEF UNDER THE CLAYTON ACT**
**15 U.S.C. §§ 15 and 26**

87. Plaintiffs incorporate by reference the allegations set forth above as though fully stated herein.

88. Plaintiffs are direct purchasers of fertilizer and related crop inputs from Nutrien within the meaning of the Clayton Act.

89. By reason of the antitrust violations alleged herein, Plaintiffs have suffered injury to their business and property in an amount to be determined at trial.

90. Plaintiffs seek recovery of damages to the extent permitted by law, together with declaratory and equitable relief as appropriate.

**COUNT III**
**VIOLATION OF THE TEXAS FREE ENTERPRISE AND ANTITRUST ACT**
**TEX. BUS. & COM. CODE § 15.21**

91. Plaintiffs incorporate by reference the allegations set forth above as though fully stated herein.

92. Nutrien's conduct, as alleged herein and to the extent proven, constituted a contract, combination, or conspiracy in restraint of trade affecting commerce in Texas.

93. Plaintiffs were injured in Texas by paying inflated prices for products sold into Texas and used in Texas operations.

94. Plaintiffs seek all relief available under applicable Texas antitrust law to the extent not duplicative of other relief awarded.

**COUNT IV**
**OBJECTION TO CLAIM NO. 16-1**
**11 U.S.C. §§ 502 and 506; Fed. R. Bankr. P. 3007 and 7001**

95. Plaintiffs incorporate by reference the allegations set forth above as though fully stated herein.

96. Nutrien filed Claim No. 16-1 in the amount of $11,748,001.33 as a secured claim against PPF Gin & Warehouse, LLC.

97. Under 11 U.S.C. § 502, a claim is allowed except to the extent it is unenforceable against the debtor or property of the debtor under applicable law, overstated, unsupported, subject to defense, or otherwise objectionable.

98. Plaintiffs object to Claim No. 16-1 and seek disallowance, reduction, setoff, recoupment, or other appropriate adjustment to the extent the claim includes unlawful antitrust overcharges, unsupported finance charges, duplicative amounts, missing credits, or other sums not properly allowable or enforceable.

99. Plaintiffs further object to the asserted secured status of Claim No. 16-1 to the extent Nutrien cannot establish the validity, extent, perfection, priority, or value support for its alleged liens and collateral coverage.

100. In addition, to the extent Plaintiffs establish affirmative estate claims, offsets, recoupment rights, or defenses arising from the same transactions or integrated commercial relationship, Claim No. 16-1 must be reduced or otherwise adjusted to reflect those rights.

101. In the alternative, and to the extent necessary, Plaintiffs seek a determination under 11 U.S.C. § 506 of the secured and unsecured portions of the claim.

**COUNT V**
**SETOFF AND RECOUPMENT**
**11 U.S.C. § 558 and Other Applicable Law**

102. Plaintiffs incorporate by reference the allegations set forth above as though fully stated herein.

103. Plaintiffs' claims against Nutrien arise from the same commercial relationship and, in substantial part, the same transactions or integrated series of transactions underlying Nutrien's asserted claim.

104. Plaintiffs are entitled to assert setoff, recoupment, and all other defenses preserved by the Bankruptcy Code and applicable nonbankruptcy law, including 11 U.S.C. § 558.

105. Any damages, credits, adjustments, or recoveries awarded to Plaintiffs should be applied against Nutrien's asserted claim to the fullest extent permitted by law.

**COUNT VI**
**EQUITABLE SUBORDINATION**
**11 U.S.C. § 510(c)**

106. Plaintiffs incorporate by reference the allegations set forth above as though fully stated herein.

107. In the alternative, and only to the extent the facts proven in discovery and at trial ultimately support such relief, Plaintiffs seek equitable subordination of Nutrien's claim under 11 U.S.C. § 510(c).

108. Plaintiffs plead this count narrowly and in the alternative, and seek subordination only to the extent the evidence establishes inequitable conduct resulting in injury to creditors or an unfair advantage to Nutrien under governing bankruptcy law.

**RESERVATION OF RIGHTS**

109. Plaintiffs reserve the right to amend or supplement this Complaint and Objection to Claim, to assert additional factual allegations, to add parties if warranted by discovery, to supplement

the invoice and overcharge allegations, and to seek estimation or other relief as appropriate in connection with claim allowance, plan confirmation, or estate administration.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and grant the following relief:

a. awarding Plaintiffs damages on their antitrust claims in an amount to be determined at trial, including any enhanced recovery permitted by law;

b. awarding declaratory and equitable relief as appropriate;

c. sustaining Plaintiffs' objection to Claim No. 16-1;

d. disallowing, reducing, reclassifying, or otherwise adjusting Claim No. 16-1 to the extent provided by law;

e. determining the secured and unsecured portions of Claim No. 16-1 to the extent necessary;

f. allowing Plaintiffs to assert and apply setoff and recoupment against any claim of Nutrien;

g. equitably subordinating Nutrien's claim to the extent warranted by the evidence and applicable law;

h. awarding Plaintiffs their costs and attorneys' fees to the extent recoverable; and

i. granting such other and further relief to which Plaintiffs may be justly entitled.

Dated: June 17, 2026.

Respectfully submitted,

**TITTLE SANTIAGO, PLLC**

*<u>/s/ Brandon J. Tittle</u>*
Brandon J. Tittle
Texas Bar No. 24090436
Email: btittle@tittlelawpllc.com
Manolo R. Santiago
Texas Bar No. 24129258
Email: msantiago@tittlelawpllc.com
1125 Legacy Dr., Ste. 230
Frisco, Texas 75034
Telephone: 972.213.2316

**COUNSEL FOR DEBTORS AND DEBTORS-IN-POSSESSION**

# EXHIBIT A

## Representative Invoice Schedule

### Table 1: Representative Invoices

| Category | Document No. | Date | Product / Description | Quantity | Unit Price | Invoice Total / Detail |
|---|---|---|---|---|---|---|
| June 2022 Urea at $740/Ton | 48679291 | 06/15/2022 | 46-0-0 urea granular | 21.0000 tons | $740.00/ton | $15,547.56 |
| June 2022 Urea at $740/Ton | 48679400 | 06/15/2022 | 46-0-0 urea granular | 21.0400 tons | $740.00/ton | $15,577.17 |
| June 2022 Urea at $740/Ton | 48679527 | 06/15/2022 | 46-0-0 urea granular | 21.0500 tons | $740.00/ton | $15,584.58 |
| June 2022 Urea at $740/Ton | 48679708 | 06/15/2022 | 46-0-0 urea granular | 21.2600 tons | $740.00/ton | $15,740.05 |
| June 2022 Urea at $740/Ton | 48687859 | 06/15/2022 | 46-0-0 urea granular | 21.0000 tons | $740.00/ton | $15,547.56 |
| June 2022 Urea at $740/Ton | 48688011 | 06/15/2022 | 46-0-0 urea granular | 21.3000 tons | $740.00/ton | $15,769.67 |
| June 2022 Urea at $740/Ton | 48688249 | 06/15/2022 | 46-0-0 urea granular | 21.0300 tons | $740.00/ton | $15,569.77 |
| June 2022 Urea at $660/Ton | 48709905 | 06/16/2022 | 46-0-0 urea granular | 21.0100 tons | $660.00/ton | $13,874.16 |
| June 2022 Urea at $660/Ton | 48690394 | 06/15/2022 | 46-0-0 urea granular | 21.0600 tons | $660.00/ton | $13,907.18 |
| June 2022 Urea at $660/Ton | 48695642 | 06/16/2022 | 46-0-0 urea granular | 20.0200 tons | $660.00/ton | $13,220.41 |
| June 2022 Urea at $660/Ton | 48718016 | 06/16/2022 | 46-0-0 urea granular | 20.1800 tons | $660.00/ton | $13,326.06 |
| June 2022 Urea at $660/Ton | 48710127 | 06/16/2022 | 46-0-0 urea granular | 20.9000 tons | $660.00/ton | $13,801.52 |
| June 2022 Urea at $660/Ton | 48710238 | 06/16/2022 | 46-0-0 urea granular | 20.0600 tons | $660.00/ton | $13,246.82 |
| June 2022 Urea at $660/Ton | 48727617 | 06/17/2022 | 46-0-0 urea granular | 21.1000 tons | $660.00/ton | $13,933.60 |
| June 2022 Urea at $660/Ton | 48728626 | 06/17/2022 | 46-0-0 urea granular | 21.1400 tons | $660.00/ton | $13,960.01 |
| June 2022 Urea at $660/Ton | 48728761 | 06/17/2022 | 46-0-0 urea granular | 21.1100 tons | $660.00/ton | $13,940.20 |
| June 2022 Urea at $660/Ton | 48728879 | 06/17/2022 | 46-0-0 urea granular | 21.0400 tons | $660.00/ton | $13,893.97 |
| June 2022 Urea at $660/Ton | 48728975 | 06/17/2022 | 46-0-0 urea granular | 22.0000 tons | $660.00/ton | $14,527.92 |
| June 2022 Urea at $660/Ton | 48729172 | 06/17/2022 | 46-0-0 urea granular | 20.0400 tons | $660.00/ton | $13,233.61 |
| June 2022 Urea at $660/Ton | 48730714 | 06/17/2022 | 46-0-0 urea granular | 19.0600 tons | $660.00/ton | $12,586.46 |
| June 2023 Urea at $583/Ton | 51455937 | 05/02/2023 | 46-0-0 urea granular | 20.0100 tons | $583.00/ton | $11,673.03 |
| June 2023 Urea at $583/Ton | 51455551 | 06/02/2023 | 46-0-0 urea granular | 22.0200 tons | $583.00/ton | $12,845.59 |
| June 2023 Urea at $583/Ton | 51455989 | 06/02/2023 | 46-0-0 urea granular | 20.2700 tons | $583.00/ton | $11,824.71 |
| June 2023 Urea at $583/Ton | 51458873 | 06/02/2023 | 46-0-0 urea granular | 20.1400 tons | $583.00/ton | $11,748.87 |
| June 2023 Urea at $583/Ton | 51459080 | 06/02/2023 | 46-0-0 urea granular | 20.0600 tons | $583.00/ton | $11,702.20 |
| June 2023 Urea at $583/Ton | 51476639 | 06/05/2023 | 46-0-0 urea granular | 20.0500 tons | $583.00/ton | $11,696.37 |
| June 2023 Urea at $583/Ton | 51477036 | 06/05/2023 | 46-0-0 urea granular | 20.1300 tons | $583.00/ton | $11,743.04 |
| June 2023 Urea at $583/Ton | 51477841 | 06/05/2023 | 46-0-0 urea granular | 20.0600 tons | $583.00/ton | $11,702.20 |
| June 2023 Urea at $583/Ton | 51479024 | 06/05/2023 | 46-0-0 urea granular | 20.0500 tons | $583.00/ton | $11,696.37 |
| June 2023 Urea at $583/Ton | 51479139 | 06/05/2023 | 46-0-0 urea granular | 20.0300 tons | $583.00/ton | approximately $11,684.70 |
| Representative Non-Fertilizer | 51245991 | 05/23/2023 | Liberty 280 SL | 540 gallons | $70.00/gallon | $37,800.00 |
| Representative Non-Fertilizer | 50393921 | 03/17/2023 | Makaze; Low Vol 6 MSO Concentrate; Choice Weather Master | multiple line items | various | $41,600.00 |
| Representative Non-Fertilizer | 50422001 | 03/23/2023 | Compadre | 48 gallons | $55.00/gallon | $2,640.00 |

**EXHIBIT A**

**Table 2: Representative Matching Packing Lists**

| Delivery No. | Product | Quantity |
|---|---|---|
| 120571 | URI PELS 46-0-0 | 42,080 lbs / 21.0400 tons |
| 120605 | URI PELS 46-0-0 | 42,100 lbs / 21.0500 tons |
| 120623 | URI PELS 46-0-0 | 42,520 lbs / 21.2600 tons |
| 120653 | URI PELS 46-0-0 | 42,600 lbs / 21.3000 tons |
| 120694 | URI PELS 46-0-0 | 42,120 lbs / 21.0600 tons |
| 120711 | URI PELS 46-0-0 | 40,040 lbs / 20.0200 tons |
| 120726 | URI PELS 46-0-0 | 42,020 lbs / 21.0100 tons |
| 120729 | URI PELS 46-0-0 | 40,360 lbs / 20.1800 tons |
| 120758 | URI PELS 46-0-0 | 41,800 lbs / 20.9000 tons |
| 120783 | URI PELS 46-0-0 | 42,280 lbs / 21.1400 tons |
| 120801 | URI PELS 46-0-0 | 42,220 lbs / 21.1100 tons |
| 120824 | URI PELS 46-0-0 | 44,000 lbs / 22.0000 tons |
| 147130 | URI PELS 46-0-0 | 44,040 lbs / 22.0200 tons |
| 147283 | URI PELS 46-0-0 | 40,280 lbs / 20.1400 tons |
| 147324 | URI PELS 46-0-0 | 40,020 lbs / 20.0100 tons |
| 147334 | URI PELS 46-0-0 | 40,540 lbs / 20.2700 tons |
| 147782 | URI PELS 46-0-0 | 40,260 lbs / 20.1300 tons |
| 147799 | URI PELS 46-0-0 | 40,060 lbs / 20.0300 tons |
| 147800 | URI PELS 46-0-0 | 40,100 lbs / 20.0500 tons |

B2500A (Form 2500A) (12/15)

# United States Bankruptcy Court

EASTERN District Of TEXAS

In re PPF GIN & WAREHOUSE, LLC, et al.
Debtor

Case No. 26-40061

Chapter 11

PPF GIN & WAREHOUSE, LLC, et al.
Plaintiff

v.

NUTRIEN AG SOLUTIONS, INC.
Defendant

Adv. Proc. No. 26-04067

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

Address of the clerk:

Clerk, United States Bankruptcy Court
660 N. Central Expwy., Ste. 3006, Plano, Texas 75074

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

Name and Address of Plaintiff's Attorney:

Tittle Santiago, PLLC
1125 Legacy Dr., Ste. 230
Frisco, Texas 75034

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

____________________ (Clerk of the Bankruptcy Court)

Date: _____________ By: ____________________(Deputy Clerk)

B2500A (Form 2500A) (12/15)

## CERTIFICATE OF SERVICE

I, ____________________________(name), certify that service of this summons and a copy of the complaint was made _______________________(date) by:

❑ Mail service: Regular, first class United States mail, postage fully pre-paid, addressed to:

❑ Personal Service: By leaving the process with the defendant or with an officer or agent of defendant at:

❑ Residence Service: By leaving the process with the following adult at:

❑ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:

❑ Publication: The defendant was served as follows: [Describe briefly]

❑ State Law: The defendant was served pursuant to the laws of the State of ________, as follows: [Describe briefly]

If service was made by personal service, by residence service, or pursuant to state law, I further certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.

Under penalty of perjury, I declare that the foregoing is true and correct.

Date ___________ Signature ____________________________________

Print Name: ___________________________

Business Address: ___________________________

___________________________

B2500A (Form 2500A) (12/15)

# United States Bankruptcy Court

EASTERN District Of TEXAS

In re PPF GIN & WAREHOUSE, LLC, et al.
Debtor

Case No. 26-40061

Chapter 11

PPF GIN & WAREHOUSE, LLC, et al.
Plaintiff

v.

Adv. Proc. No. 26-04067

NUTRIEN, LTD.
Defendant

**SUMMONS IN AN ADVERSARY PROCEEDING**

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

Address of the clerk:

Clerk, United States Bankruptcy Court
660 N. Central Expwy., Ste. 3006, Plano, Texas 75074

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

Name and Address of Plaintiff's Attorney:

Tittle Santiago, PLLC
1125 Legacy Dr., Ste. 230
Frisco, Texas 75034

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

____________________ (Clerk of the Bankruptcy Court)

Date: ______________ By: ______________________(Deputy Clerk)

B2500A (Form 2500A) (12/15)

## CERTIFICATE OF SERVICE

I, ____________________________(name), certify that service of this summons and a copy of the complaint was made ______________________(date) by:

❑ Mail service: Regular, first class United States mail, postage fully pre-paid, addressed to:

❑ Personal Service: By leaving the process with the defendant or with an officer or agent of defendant at:

❑ Residence Service: By leaving the process with the following adult at:

❑ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:

❑ Publication: The defendant was served as follows: [Describe briefly]

❑ State Law: The defendant was served pursuant to the laws of the State of ________, as follows: [Describe briefly]

If service was made by personal service, by residence service, or pursuant to state law, I further certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.

Under penalty of perjury, I declare that the foregoing is true and correct.

Date ___________ Signature ____________________________________

Print Name: ___________________________

Business Address: ___________________________

___________________________

B2500A (Form 2500A) (12/15)

# United States Bankruptcy Court

EASTERN District Of TEXAS

| | | |
|---|---|---|
| In re PPF GIN & WAREHOUSE, LLC, et al.<br>Debtor | ) | Case No. 26-40061 |
| | ) | Chapter 11 |
| PPF GIN & WAREHOUSE, LLC, et al.<br>Plaintiff | ) | |
| v. | ) | Adv. Proc. No. 26-04067 |
| NUTRIEN AG SOLUTIONS, INC.<br>Defendant | ) | |

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

Address of the clerk:

Clerk, United States Bankruptcy Court
660 N. Central Expwy., Ste. 3006, Plano, Texas 75074

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

Name and Address of Plaintiff's Attorney:

Tittle Santiago, PLLC
1125 Legacy Dr., Ste. 230
Frisco, Texas 75034

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

U.S. BANKRUPTCY COURT EASTERN DISTRICT OF TEXAS

/S/ Jason K. McDonald

Date: 06/18/2026

B2500A (Form 2500A) (12/15)

## CERTIFICATE OF SERVICE

I, ____________________________(name), certify that service of this summons and a copy of the complaint was made _______________________(date) by:

❑ Mail service: Regular, first class United States mail, postage fully pre-paid, addressed to:

❑ Personal Service: By leaving the process with the defendant or with an officer or agent of defendant at:

❑ Residence Service: By leaving the process with the following adult at:

❑ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:

❑ Publication: The defendant was served as follows: [Describe briefly]

❑ State Law: The defendant was served pursuant to the laws of the State of ________, as follows: [Describe briefly]

If service was made by personal service, by residence service, or pursuant to state law, I further certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.

Under penalty of perjury, I declare that the foregoing is true and correct.

Date ___________ Signature ____________________________________

Print Name: ___________________________

Business Address: ___________________________

___________________________

B2500A (Form 2500A) (12/15)

# United States Bankruptcy Court

EASTERN District Of TEXAS

| | |
|---|---|
| In re PPF GIN & WAREHOUSE, LLC, et al. Debtor | Case No. 26-40061 |
| | Chapter 11 |
| PPF GIN & WAREHOUSE, LLC, et al. Plaintiff | |
| v. | Adv. Proc. No. 26-04067 |
| NUTRIEN, LTD. Defendant | |

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

Address of the clerk:

Clerk, United States Bankruptcy Court
660 N. Central Expwy., Ste. 3006, Plano, Texas 75074

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

Name and Address of Plaintiff's Attorney:

Tittle Santiago, PLLC
1125 Legacy Dr., Ste. 230
Frisco, Texas 75034

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

/S/ Jason K. McDonald

Date: 06/18/2026

B2500A (Form 2500A) (12/15)

# CERTIFICATE OF SERVICE

I, ____________________________(name), certify that service of this summons and a copy of the complaint was made _______________________(date) by:

❑ Mail service: Regular, first class United States mail, postage fully pre-paid, addressed to:

❑ Personal Service: By leaving the process with the defendant or with an officer or agent of defendant at:

❑ Residence Service: By leaving the process with the following adult at:

❑ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:

❑ Publication: The defendant was served as follows: [Describe briefly]

❑ State Law: The defendant was served pursuant to the laws of the State of _________, as follows: [Describe briefly]

If service was made by personal service, by residence service, or pursuant to state law, I further certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.

Under penalty of perjury, I declare that the foregoing is true and correct.

Date ____________ Signature ______________________________________

Print Name: ____________________________

Business Address: ____________________________

____________________________

B2500A (Form 2500A) (12/15)

# United States Bankruptcy Court

## EASTERN District Of TEXAS

In re PPF GIN & WAREHOUSE, LLC, et al.
Debtor

PPF GIN & WAREHOUSE, LLC, et al.
Plaintiff

v.

NUTRIEN AG SOLUTIONS, INC.
Defendant

Case No. 26-40061

Chapter 11

Adv. Proc. No. 26-04067

**SUMMONS IN AN ADVERSARY PROCEEDING**

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

Address of the clerk:

Clerk, United States Bankruptcy Court
660 N. Central Expwy., Ste. 3006, Plano, Texas 75074

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

Name and Address of Plaintiff's Attorney:

Tittle Santiago, PLLC
1125 Legacy Dr., Ste. 230
Frisco, Texas 75034

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

U.S. BANKRUPTCY COURT EASTERN DISTRICT OF TEXAS

/S/ Jason K. McDonald

Date: 06/18/2026

Document Page 2 of 2

B2500A (Form 2500A) (12/15)

## CERTIFICATE OF SERVICE

I, Kevin Whizin (name), certify that service of this summons and a copy of the complaint was made 6-24-26 (date) by:

☒ Mail service: Regular, first class United States mail, postage fully pre-paid, addressed to:
Nutrien Ag Solutions
c/o C T Corporporation System, Registered Agent
1999 Bryan Street, Ste 900, Dallas, Texas 75201.

☐ Personal Service: By leaving the process with the defendant or with an officer or agent of defendant at:

☐ Residence Service: By leaving the process with the following adult at:

☐ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:

☐ Publication: The defendant was served as follows: [Describe briefly]

☐ State Law: The defendant was served pursuant to the laws of the State of ________, as follows: [Describe briefly]

If service was made by personal service, by residence service, or pursuant to state law, I further certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.

Under penalty of perjury, I declare that the foregoing is true and correct.

Date 6-25-26 Signature Kevin Whizin

Print Name: Kevin Whizin

Business Address: 325 N. St. Paul #1400
Dallas, TX 75201

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-40061** |
| | § | |
| **PPF GIN & WAREHOUSE, LLC, *et al.*,[1]** | § | **Chapter 11** |
| | § | |
| **Debtors.** | § | **Jointly Administered** |

---

| | | |
|---|---|---|
| | § | |
| **PPF GIN & WAREHOUSE, LLC, *et al.*,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Adversary No. 26-04067** |
| | § | |
| **NUTRIEN AG SOLUTIONS, INC. and NUTRIEN LTD.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**DEBTORS' MOTION TO SEVER ANTITRUST CLAIMS FROM BANKRUPTCY CLAIMS, STAY LIMITED ASPECTS OF THE BANKRUPTCY CLAIMS, PRESERVE DISPUTED NUTRIEN PROCEEDS, AND FOR RELATED RELIEF; OR, ALTERNATIVELY, FOR SEPARATE TRIALS**

**YOUR RIGHTS MAY BE AFFECTED BY THE RELIEF SOUGHT IN THIS PLEADING. YOU SHOULD READ THIS PLEADING CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE. IF YOU OPPOSE THE RELIEF SOUGHT BY THIS PLEADING, YOU MUST FILE A WRITTEN OBJECTION, EXPLAINING THE FACTUAL AND/OR LEGAL BASIS FOR OPPOSING THE RELIEF.**

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE SHOWN IN THE CERTIFICATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING WITH APPROPRIATE NOTICE. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE**

[1] The Debtors (including the last four digits of their respective taxpayer identification numbers) are: PPF Gin & Warehouse, LLC (7522); PPF Farms, LLC (3532); and Pilgrim Land Management, LLC (4139). They are all headquartered and operated from 700 FM 1335, Cooper, Texas 75432.

**STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**TO THE HONORABLE BRENDA T. RHOADES
CHIEF UNITED STATES BANKRUPTCY JUDGE:**

PPF Gin & Warehouse, LLC, PPF Farms, LLC, and Pilgrim Land Management, LLC, as debtors and debtors-in-possession (collectively, the "Debtors" or "Plaintiffs"), file this Motion to Sever Antitrust Claims from Bankruptcy Claims, Stay Limited Aspects of the Bankruptcy Claims, Preserve Disputed Nutrien Proceeds, and for Related Relief; or, Alternatively, for Separate Trials (the "Motion"). In support, the Debtors respectfully state as follows.

## PRELIMINARY STATEMENT

1. This adversary proceeding joins two legally and procedurally different groups of claims. Counts I through III assert federal and Texas antitrust claims arising from alleged market-wide conduct affecting prices for nitrogen, phosphorus, and potassium fertilizers. Counts IV through VI concern the allowance and treatment of Nutrien's proofs of claim in these Chapter 11 cases, including claim objection, setoff and recoupment, equitable subordination, lien and secured-status issues, and entitlement to estate distributions.

2. The antitrust claims share common factual questions with actions centralized in *In re Nitrogen, Phosphorus, and Potassium (NPK) Fertilizer Antitrust Litigation*, MDL No. 3187, in the United States District Court for the District of Kansas. Those claims are therefore suited for coordinated pretrial treatment with the MDL. The bankruptcy claims, by contrast, belong in this Court as part of claims allowance, estate administration, sale-process supervision, reserve-setting, and plan treatment.

3. The two claim groups are not wholly unrelated. Antitrust liability and damages may bear on the Debtors' asserted setoff, recoupment, and equitable-subordination theories. That overlap supports a limited stay of the antitrust-dependent aspects of the bankruptcy claims; it does not justify moving the entire claims-allowance dispute to the MDL court or freezing independent bankruptcy issues that this Court can and should administer now.

4. Rule 21 severance supplies the necessary procedural separation because severed claims become independent actions. By contrast, Rule 42(b) separate trials ordinarily leave all claims within one action and usually culminate in one judgment. A separate action is thus the cleaner procedural vehicle for presenting only the antitrust claims to the Judicial Panel on Multidistrict Litigation (the "JPML") while keeping the bankruptcy claims before this Court. See *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304-05 & n.19 (5th Cir. 1993); *Allied Elevator, Inc. v. East Texas State Bank*, 965 F.2d 34, 36 (5th Cir. 1992).

5. The requested order therefore would: (a) continue Counts I through III in Adv. Proc. No. 26-04067 as the "Antitrust Action" for possible tag-along transfer; (b) sever Counts IV through VI into a new adversary proceeding retained by this Court as the "Bankruptcy Claims Action"; (c) stay only those aspects of the Bankruptcy Claims Action that require adjudication of antitrust liability or antitrust injury and damages; (d) preserve this Court's authority to decide independent claim, lien, sale, plan, estimation, adequate-protection, reserve, and distribution issues; and (e) preserve any disputed Nutrien sale proceeds until the parties agree or this Court orders otherwise after notice and a hearing. If the Court prefers the reverse docket allocation, the Debtors request equivalent relief assigning a new adversary number to the Antitrust Action and retaining Adv. Proc. No. 26-04067 for the Bankruptcy Claims Action.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. §§ 1334 and 157. The retained bankruptcy claims and the requested administration of potential estate proceeds are core matters under, among other provisions, 28 U.S.C. § 157(b)(2)(A), (B), (C), (K), (N), and (O).

7. The Court need not decide in this Motion the ultimate final-adjudication path for the Antitrust Claims, whether any party is entitled to a jury trial, whether any party has consented to final adjudication by this Court, or whether withdrawal of the reference may become appropriate at a later

stage. The requested severance preserves those issues, and no party waives any position concerning them by seeking or opposing the relief requested here.

8. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

9. On January 5, 2026, each Debtor filed a voluntary Chapter 11 petition in this Court. The cases are jointly administered under Case No. 26-40061.

10. On May 4, 2026, Nutrien filed Proof of Claim No. 16 in Case No. 26-40061, Proof of Claim No. 6 in Case No. 26-40062, and Proof of Claim No. 7 in Case No. 26-40063 (collectively, the "Proofs of Claim"). Through those filings, Nutrien asserts secured claims and related rights against estate property and/or proceeds.

11. On June 16, 2026, the Debtors commenced this adversary proceeding by filing the Debtors' Original Complaint and Objection to Claim [Adv. Dkt. No. 1] (the "Complaint") against Nutrien Ltd. and Nutrien Ag Solutions, Inc. (collectively, "Nutrien").

12. Counts I through III assert: (i) violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; (ii) damages and equitable relief under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26; and (iii) violation of the Texas Free Enterprise and Antitrust Act, Tex. Bus. & Com. Code § 15.21. These counts are referred to collectively as the "Antitrust Claims."

13. The Antitrust Claims arise from the Debtors' direct purchases of NPK fertilizers and allege that Nutrien, independently and in coordination with other fertilizer producers, participated in agreements, understandings, or coordinated conduct to fix, raise, maintain, or stabilize NPK fertilizer prices in the United States.

14. Counts IV through VI assert: (i) objection to Claim No. 16-1 under 11 U.S.C. §§ 502 and 506 and Bankruptcy Rules 3007 and 7001; (ii) setoff and recoupment under 11 U.S.C. § 558 and other applicable law; and (iii) equitable subordination under 11 U.S.C. § 510(c). These counts are referred to collectively as the "Bankruptcy Claims."

15. The Bankruptcy Claims concern the amount, allowance, classification, secured status, priority, treatment, setoff, recoupment, and potential subordination of the Proofs of Claim, as well as asserted liens and entitlement to distributions from estate property or sale proceeds.

16. On June 9, 2026, the JPML centralized related NPK fertilizer antitrust actions in the District of Kansas before the Honorable Eric F. Melgren. *In re Nitrogen, Phosphorus, and Potassium (NPK) Fertilizer Antitrust Litig.*, MDL No. 3187, Doc. 177, at 2 (J.P.M.L. June 9, 2026) (the "MDL Action"). The Panel found that centralization would eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve party and judicial resources.

17. The Antitrust Claims involve common factual questions with the MDL Action and may qualify as a potential tag-along action under JPML Rules 1.1(i) and 7.1. The Bankruptcy Claims, by contrast, do not concern market-wide antitrust liability as an independent end; they concern the allowance and administration of creditor claims in these estates.

18. Meanwhile, the Debtors continue to administer these Chapter 11 cases, including sales, sale planning, reserves, and plan-related issues affecting estate property and distributions. Nutrien asserts liens and/or distribution rights in property and proceeds that may be affected by the pending Bankruptcy Claims and by the extent to which any antitrust recovery may support setoff, recoupment, or equitable subordination. Distribution of disputed proceeds to Nutrien before those matters are appropriately resolved could prejudice the estates and complicate effective relief.

## RELIEF REQUESTED

19. The Debtors request an order under Bankruptcy Rule 7021 and Civil Rule 21 severing the Antitrust Claims and Bankruptcy Claims into independent actions; staying only antitrust-dependent aspects of the Bankruptcy Claims Action under this Court's docket-management authority; preserving disputed Nutrien sale proceeds; staying responsive pleading deadlines pending allocation and transfer; authorizing the parties to take the procedural steps required before the JPML; and granting related

relief. In the alternative, the Debtors request separate trials and corresponding case-management relief under Bankruptcy Rule 7042 and Civil Rule 42(b).

## BASIS FOR RELIEF

### A. Rule 21 Severance, Not Trial Bifurcation Alone, Is the Proper Primary Remedy.

20. Bankruptcy Rule 7021 makes Civil Rule 21 applicable in adversary proceedings. Rule 21 provides that, on just terms, a court may at any time sever any claim against a party. FED. R. CIV. P. 21. The rule permits severance even when initial joinder was permissible, when separate actions will avoid prejudice or delay, promote judicial economy, or serve fundamental fairness.

21. Severance and separate trials are distinct. Under Rule 42(b), claims remain part of one action and separate trials usually culminate in one judgment. Under Rule 21, severed claims become independent actions capable of separate administration and judgment. *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304-05 & n.19 (5th Cir. 1993); *Allied Elevator, Inc. v. E. Tex. State Bank*, 965 F.2d 34, 36 (5th Cir. 1992). Because the Debtors seek to place only the Antitrust Claims in a transfer-ready procedural posture while retaining the Bankruptcy Claims here, Rule 21 severance is the appropriate primary remedy.

22. The Fifth Circuit evaluates Rule 21 severance using five considerations: (1) whether the claims arise from the same transaction or series of transactions; (2) whether they present common questions of law or fact; (3) whether settlement or judicial economy would be facilitated; (4) whether severance would avoid prejudice; and (5) whether the claims require different witnesses and documentary proof. *Defense Distributed v. Bruck*, 30 F.4th 414, 431 (5th Cir. 2022); *In re Rolls Royce Corp.*, 775 F.3d 671, 680 & n.40 (5th Cir. 2014).

23. The Court has broad discretion to apply those considerations to the practical demands of this case. The requested severance does not deny the factual connection between some bankruptcy remedies and the Antitrust Claims. It gives each claim group a workable procedural home while managing the overlap through a limited stay and coordinated use of discovery.

**B. The Fifth Circuit Factors Favor Severance.**

24. The first factor is mixed but supports procedural separation. The Antitrust Claims arise from purchases of NPK fertilizers and alleged market-wide coordination among fertilizer producers. The Bankruptcy Claims arise from the filing and allowance of the Proofs of Claim, asserted liens, setoff and recoupment rights, equitable subordination, and estate distributions. Some antitrust facts may bear on bankruptcy remedies, but the claims do not arise from a single transaction in the ordinary sense.

25. The second factor is likewise mixed. The claim groups share potential factual questions concerning Nutrien's alleged conduct and the Debtors' resulting damages. Their governing legal questions are different: federal and state competition law in the Antitrust Action; bankruptcy claim allowance, secured status, priority, setoff, recoupment, subordination, and distribution law in the Bankruptcy Claims Action.

26. The third factor strongly favors severance. The JPML has already determined that centralized management of NPK fertilizer antitrust actions will eliminate duplicative discovery and inconsistent pretrial rulings. Keeping the Antitrust Claims together with the MDL Action promotes that objective. Retaining the Bankruptcy Claims here allows the Court administering these estates to determine the Proofs of Claim, liens, plan treatment, reserves, and distributions without exporting those matters to a nationwide antitrust proceeding.

27. Severance also creates a cleaner settlement structure. The MDL Action can address antitrust discovery, liability, damages, and any global or coordinated resolution. This Court can determine whether and how any judgment or settlement affects allowance, setoff, recoupment, subordination, plan treatment, or distributions, including any approval required under the Bankruptcy Code.

28. Recent JPML practice confirms the importance of claims-level separation. In *In re FTX Cryptocurrency Exchange Collapse Litigation*, the Panel recognized that bankruptcy adversary proceedings may be transferred under 28 U.S.C. § 1407 but denied transfer where the action was

intertwined with central bankruptcy issues and the proposed carve-out was impracticable because debtor and nondebtor claims were jointly pleaded within the same counts. MDL No. 3076, Doc. 278, at 1-2 & n.1 (J.P.M.L. Apr. 11, 2024). The Panel emphasized that Section 1407 permits separation of claims, not issues embedded within a claim.

29. This case presents the opposite procedural posture. The Complaint separately pleads the Antitrust Claims in Counts I through III and the Bankruptcy Claims in Counts IV through VI. Rule 21 severance now will create claims-level actions that the JPML and both courts can administer without attempting to divide issues inside a single count.

30. The fourth factor favors severance because it avoids prejudice to both sides. The Debtors avoid having claim allowance, lien, sale, and plan issues displaced or delayed by nationwide antitrust litigation. Nutrien avoids simultaneous merits adjudication of the same alleged antitrust conduct in two forums because the antitrust-dependent portions of the Bankruptcy Claims Action will be stayed.

31. The fifth factor also favors severance. Antitrust litigation will require market, pricing, purchaser, producer, economic, expert, and industry evidence common to MDL No. 3187. The independent bankruptcy issues will require proofs of claim, loan and security documents, accountings, lien and collateral evidence, postpetition interest and fee support, sale records, plan evidence, and estate-distribution proof. To the extent some proof overlaps, that overlap is more efficiently managed through coordinated use of MDL discovery than by leaving all claims bundled in one adversary proceeding.

32. On balance, the efficiencies, procedural destinations, prejudice reduction, and distinct proof outweigh the limited factual overlap. Severance is warranted.

### C. A Narrow Stay Should Coordinate the Two Actions Without Freezing Estate Administration.

33. Federal courts have inherent authority to control their dockets and stay proceedings when economy of time and effort for the court, counsel, and litigants warrants it. *Landis v. N. Am. Co.*,

299 U.S. 248, 254-55 (1936). A stay should be tailored, subject to review, and no broader than necessary. See *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983).

34. The requested stay is limited to discovery, dispositive motion practice, and trial in the Bankruptcy Claims Action concerning whether Nutrien engaged in the antitrust conduct alleged in Counts I through III and the amount of resulting antitrust injury or damages. Those issues should proceed in the Antitrust Action and, if transferred, under the MDL court's management.

35. The requested stay does not prevent this Court from addressing issues that do not require deciding the merits of the Antitrust Claims, including: (a) the facial sufficiency and documentation of the Proofs of Claim; (b) principal, interest, default interest, fees, expenses, credits, and payments; (c) lien validity, perfection, extent, priority, and secured status; (d) estimation under 11 U.S.C. § 502(c); (e) adequate protection; (f) sale procedures and reserves; (g) plan classification and treatment; (h) interim distributions; (i) preservation of estate property or proceeds; or (j) any other matter this Court determines can fairly proceed independently.

36. The stay will reduce duplication rather than create it. Discovery concerning alleged NPK price coordination can be conducted once under the MDL court's supervision. The parties may later present any judgment, settlement, factual finding, or damages determination to this Court, subject to all objections, defenses, evidentiary rules, and applicable preclusion principles.

37. The requested stay will not be immoderate or unreviewable. The parties should file a joint status report every ninety (90) days beginning ninety (90) days after entry of the requested order, describing the JPML and MDL status, remaining disputes, and whether any portion of the stay should be modified. Either party may seek modification for good cause after notice and a hearing.

38. To avoid default and unnecessary motion practice while the claim groups are allocated and the Antitrust Action proceeds through the JPML process, the Court should stay all current responsive pleading deadlines. Nutrien should respond in the Antitrust Action on the date set by the MDL court or, if transfer is denied, within twenty-one (21) days after the denial becomes final or as

this Court orders. Nutrien should respond in the Bankruptcy Claims Action within twenty-one days after this Court directs a response or lifts the applicable stay.

**D. The Court Should Preserve Disputed Nutrien Proceeds and Retain Control of Estate Distributions.**

39. The Bankruptcy Claims concern whether, in what amount, and with what priority Nutrien may receive estate distributions. This Court has authority over claim allowance, lien treatment, sales, and distribution of estate property under 11 U.S.C. §§ 105(a), 363, 502, 506, and 510(c), and may direct disputed funds to be preserved under Bankruptcy Rule 7067 and applicable law.

40. The Debtors request preservation of the net cash proceeds from any sale of PLM property that Nutrien asserts would otherwise be distributable to it (the "Disputed Nutrien Proceeds"). Until the parties resolve the relevant Antitrust Claims and Bankruptcy Claims by an approved settlement or final order, no Disputed Nutrien Proceeds should be distributed to Nutrien absent the Debtors' written consent or further order of this Court after notice and a hearing.

41. Any Disputed Nutrien Proceeds should be held in a segregated, interest-bearing escrow account or in the registry of the Court. Nutrien's asserted liens, if any, may attach to the proceeds with the same validity, extent, priority, and enforceability they had against the sold property immediately before the sale, subject to the Debtors' objections and reserved rights, all rights of other parties in interest, and the terms of any sale order. Interest should follow the principal.

42. This preservation mechanism protects both sides. It prevents a disputed distribution that may be difficult to recover, while preserving Nutrien's asserted lien position in cash pending adjudication. It does not determine the amount of the Disputed Nutrien Proceeds, the validity or priority of any lien, the allowed amount of any claim, or the rights of any nonparty.

43. If a final or existing sale order already governs the relevant proceeds, the requested order should operate consistently with that order. The Debtors reserve the right to request sale-specific relief, and Nutrien and all other parties reserve their objections, at the time of any proposed sale or distribution.

**E. The Requested JPML and Automatic-Stay Relief Is Limited and Procedural.**

44. JPML Rule 7.1(a) requires prompt notice of potential tag-along actions in an existing MDL. After severance, either party may notify the JPML that the Antitrust Action may be a potential tag-along action, and the parties may participate in any conditional-transfer proceedings.

45. Because the Debtors are prosecuting the Antitrust Claims as estate claims, the filing and defense of the Antitrust Action generally does not constitute collection against the Debtors. To eliminate uncertainty, however, the Debtors request that, to the extent the automatic stay applies, it be modified solely to permit Nutrien to file a tag-along notice, participate before the JPML and MDL court, defend the Antitrust Claims, and take other actions expressly authorized by the severance order.

46. No requested stay modification authorizes Nutrien to collect or enforce the Proofs of Claim, exercise control over estate property or sale proceeds, obtain a distribution, enforce any lien, or take any other action against the Debtors or estate property without further order of this Court. Except for the limited procedural relief expressly granted, the automatic stay remains unaffected.

47. Nothing in the requested order decides whether the reference must later be withdrawn for trial or final adjudication of any Antitrust Claim, whether any party has consented to final adjudication by a bankruptcy court or MDL court, or whether a jury right exists. Those matters are expressly reserved.

48. This Court should retain jurisdiction to interpret, enforce, clarify, or modify the severance and stay order and to determine all Bankruptcy Claims and estate-distribution matters.

**F. Alternatively, the Court Should Order Separate Trials and Comparable Case-Management Relief Under Rule 42(b).**

49. Bankruptcy Rule 7042 makes Civil Rule 42 applicable in adversary proceedings. Rule 42(b) permits separate trials for convenience, to avoid prejudice, or to expedite and economize. The Antitrust Claims and Bankruptcy Claims are sufficiently distinct to be tried separately without injustice, particularly because antitrust-dependent issues can be stayed until resolved in the Antitrust Action.

50. If the Court declines to create independent actions under Rule 21, it should order separate trials of Counts I through III and Counts IV through VI, impose the same limited stay and proceeds-preservation terms, and direct the parties to request that the JPML separate and remand the Bankruptcy Claims under 28 U.S.C. § 1407(a) if the entire adversary proceeding is conditionally transferred.

51. Alternative Rule 42(b) relief is less administratively clean than Rule 21 severance, but it is preferable to either transferring the whole claims-allowance dispute to the MDL Action or imposing a blanket stay that prevents this Court from administering the estates.

**PRAYER**

WHEREFORE, the Debtors respectfully request that the Court enter the proposed order and grant the following relief: (a) sever Counts IV through VI from Counts I through III under Bankruptcy Rule 7021 and Civil Rule 21; (b) continue Adv. Proc. No. 26-04067 as the Antitrust Action and direct the Clerk to open a new adversary proceeding for the Bankruptcy Claims Action, or make the reverse docket allocation if the Court prefers; (c) deem the Complaint operative in each resulting action only as to the claims allocated to that action, without adjudicating service, personal jurisdiction, consent, or jury-trial issues; (d) stay discovery, dispositive motion practice, and trial in the Bankruptcy Claims Action only to the extent they require deciding alleged antitrust liability or antitrust injury and damages; (e) retain authority to adjudicate all independent claim-allowance, lien, secured-status, priority, estimation, adequate-protection, sale, plan, reserve, and distribution matters; (f) stay current responsive pleading deadlines and establish response deadlines consistent with the proposed order; (g) authorize the parties to notify and participate before the JPML and, if applicable, in MDL No. 3187; (h) preserve the Disputed Nutrien Proceeds in a segregated, interest-bearing escrow or the Court registry and prohibit distribution to Nutrien absent written consent or further order after notice and a hearing; (i) provide that any asserted Nutrien liens attach to the Disputed Nutrien Proceeds with the same validity, extent, priority, and enforceability, subject to all objections, reserved rights, competing interests, and

sale-order terms; (j) to the extent necessary, modify the automatic stay solely for the procedural participation expressly authorized while preserving the stay in all other respects; (k) require joint status reports every ninety days and permit modification for good cause; (l) alternatively, order separate trials and comparable case-management relief under Bankruptcy Rule 7042 and Civil Rule 42(b); and (m) grant such other and further relief, at law or in equity, as the Court deems just and proper.

Dated: July 17, 2026.

Respectfully submitted,

**TITTLE SANTIAGO, PLLC**

*/s/ Brandon J. Tittle*
Brandon J. Tittle
Texas Bar No. 24090436
Email: btittle@tittlelawpllc.com
Manolo R. Santiago
Texas Bar No. 24129258
Email: msantiago@tittlelawpllc.com
1125 Legacy Dr., Ste. 230
Frisco, Texas 75034
Telephone: 972.213.2316

**COUNSEL FOR DEBTORS AND DEBTORS-IN-POSSESSION**

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2026, a true and correct copy of the foregoing was served through the Court's electronic filing system upon all parties receiving electronic service in accordance with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules.

/s/ Brandon J. Tittle
Brandon J. Tittle

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-40061** |
| | § | |
| **PPF GIN & WAREHOUSE, LLC, *et al.*,**[1] | § | **Chapter 11** |
| | § | |
| **Debtors.** | § | **Jointly Administered** |

| | | |
|---|---|---|
| | § | |
| **PPF GIN & WAREHOUSE, LLC, *et al.*,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Adversary No. 26-04067** |
| | § | |
| **NUTRIEN AG SOLUTIONS, INC. and NUTRIEN LTD.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**ORDER GRANTING DEBTORS' MOTION TO SEVER ANTITRUST CLAIMS FROM BANKRUPTCY CLAIMS, STAY LIMITED ASPECTS OF THE BANKRUPTCY CLAIMS, PRESERVE DISPUTED NUTRIEN PROCEEDS, AND FOR RELATED RELIEF**

Upon consideration of the *Debtors' Motion to Sever Antitrust Claims from Bankruptcy Claims, Stay Limited Aspects of the Bankruptcy Claims, Preserve Disputed Nutrien Proceeds, and for Related Relief* (the "Motion"), any responses and objections, the record, and the arguments of counsel, the Court finds that notice was sufficient, that the relief below is in the best interests of the estates and parties in interest, and that good cause exists. Capitalized terms not defined in this Order have the meanings assigned in the Motion. It is therefore

**ORDERED, ADJUDGED AND DECREED that:**

1. The Motion is GRANTED as provided in this Order.

[1] The Debtors (including the last four digits of their respective taxpayer identification numbers) are: PPF Gin & Warehouse, LLC (7522); PPF Farms, LLC (3532); and Pilgrim Land Management, LLC (4139). They are all headquartered and operated from 700 FM 1335, Cooper, Texas 75432.

2. Counts I, II, and III of the Complaint (the "Antitrust Claims") are severed from Counts IV, V, and VI (the "Bankruptcy Claims") under Federal Rule of Bankruptcy Procedure 7021 and Federal Rule of Civil Procedure 21. The two claim groups shall proceed as independent actions.

3. Adversary Proceeding No. 26-04067 shall continue as the action asserting the Antitrust Claims (the "Antitrust Action"). The Clerk is directed to open a new adversary proceeding asserting the Bankruptcy Claims (the "Bankruptcy Claims Action") and to copy or link the Complaint, this Order, party appearances, and other docket materials the Clerk deems administratively appropriate. If the Clerk determines that the reverse docket allocation is more efficient, the Clerk may retain Adversary Proceeding No. 26-04067 for the Bankruptcy Claims Action and assign the new adversary number to the Antitrust Action without altering the substantive relief granted by this Order.

4. The Complaint is deemed operative in the Antitrust Action only as to Counts I through III and in the Bankruptcy Claims Action only as to Counts IV through VI. No amended complaint is required solely because of severance. Service already accomplished shall have the same effect, if any, in each resulting action as it had before severance. This Order does not adjudicate the sufficiency of service, personal jurisdiction, or any defense relating to service.

5. All current deadlines for Nutrien Ltd. and Nutrien Ag Solutions, Inc. to answer, move, or otherwise respond to the Complaint are STAYED. Neither Defendant shall be deemed in default during the stay.

6. In the Antitrust Action, the Defendants shall respond on the date set by the MDL court if the action is transferred to MDL No. 3187. If transfer is finally denied, the Defendants

shall respond within twenty-one days after the denial becomes final, or on another date set by this Court.

7. In the Bankruptcy Claims Action, the Defendants shall respond within twenty-one days after this Court directs a response or lifts the applicable stay, unless the parties agree or the Court orders otherwise.

8. Discovery, dispositive motion practice, and trial in the Bankruptcy Claims Action are STAYED only to the extent they require adjudication of: (a) whether Nutrien engaged in the antitrust conduct alleged in Counts I through III; or (b) the existence or amount of antitrust injury or damages arising from that conduct (the "Antitrust-Dependent Matters").

9. The stay does not restrict this Court from considering or determining matters that can fairly proceed without adjudicating the Antitrust-Dependent Matters, including: (a) documentation and facial sufficiency of the Proofs of Claim; (b) principal, interest, default interest, fees, expenses, credits, and payments; (c) lien validity, perfection, extent, priority, and secured status; (d) estimation under 11 U.S.C. § 502(c); (e) adequate protection; (f) sale procedures, reserves, and escrow; (g) plan classification and treatment; (h) interim distributions; (i) preservation of estate property or proceeds; and (j) any other matter this Court determines can fairly proceed independently.

10. The Bankruptcy Court retains jurisdiction to determine the Bankruptcy Claims and all matters concerning the Proofs of Claim, including allowance, amount, classification, secured status, priority, validity, perfection, enforceability, treatment, setoff, recoupment, equitable subordination, and entitlement to any distribution from estate property or sale proceeds.

11. Either party may notify the Clerk of the Judicial Panel on Multidistrict Litigation that the Antitrust Action may be a potential tag-along action to *In re Nitrogen, Phosphorus, and*

*Potassium (NPK) Fertilizer Antitrust Litigation*, MDL No. 3187, and may participate in any related conditional-transfer or MDL proceedings.

12. Nothing in this Order constitutes consent to final adjudication of the Bankruptcy Claims by the MDL court. No filing, transfer, stipulation, ruling, or order entered in connection with the JPML proceedings or MDL No. 3187 shall, by itself, determine the allowance, secured status, priority, treatment, or distribution rights associated with the Proofs of Claim. Any judgment, settlement, factual finding, or damages determination in the Antitrust Action may be asserted in the Bankruptcy Claims Action subject to all objections, defenses, evidentiary rules, and applicable principles of preclusion.

13. Until the Antitrust Claims and Bankruptcy Claims are resolved by settlement approved by this Court or by final order, no portion of the net cash proceeds from a sale of PLM property that Nutrien claims would otherwise be distributable to it (the "Disputed Nutrien Proceeds") shall be distributed to Nutrien absent the Debtors' written consent or further order of this Court after notice and a hearing.

14. The Disputed Nutrien Proceeds shall be held in a segregated, interest-bearing escrow account or in the registry of this Court. Nutrien's asserted liens, if any, shall attach to the Disputed Nutrien Proceeds with the same validity, extent, priority, and enforceability they had against the sold property immediately before the sale, subject to all Debtor objections and reserved rights, the rights of all other parties in interest, and the terms of any applicable sale order. Interest earned shall follow the principal.

15. Paragraphs 13 and 14 do not determine the amount of the Disputed Nutrien Proceeds, the allowance of any claim, the validity, extent, priority, perfection, or enforceability of any lien, or the rights of any nonparty. If an existing or future sale order governs the relevant

proceeds, this Order shall be construed consistently with that sale order, and any party may seek clarification from this Court.

16. To the extent the automatic stay of 11 U.S.C. § 362 applies, it is modified solely to permit Nutrien to file a notice of potential tag-along action, participate in proceedings before the JPML and in MDL No. 3187, defend the Antitrust Claims, and take actions expressly authorized by this Order. Except as expressly provided, the automatic stay remains unaffected. Nothing in this Order authorizes Nutrien to collect or enforce the Proofs of Claim, exercise control over estate property or sale proceeds, obtain a distribution, enforce any lien, or take any other action against the Debtors or estate property without further order of this Court.

17. Nothing in this Order decides or waives any jury-trial right, any issue concerning final adjudicatory authority or consent, or whether withdrawal of the reference may later be appropriate. All such rights and issues are reserved.

18. Beginning ninety days after entry of this Order, the parties shall file a joint status report every ninety days in the Bankruptcy Claims Action describing the status of the JPML and MDL proceedings, the Antitrust Action, the Bankruptcy Claims Action, and whether any portion of the stay should be modified.

19. The Debtors or Nutrien may move to clarify or modify this Order for good cause after notice and a hearing. No waiver or modification shall be inferred from silence, inaction, or participation in the Bankruptcy Cases, the Antitrust Action, the Bankruptcy Claims Action, or MDL No. 3187.

20. This Court retains jurisdiction to interpret, implement, enforce, and modify this Order.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE:<br><br>PPF GIN & WAREHOUSE, LLC, *et al.*,<br>Debtors. | §<br>§<br>§<br>§<br>§<br>§ | Case No. 26-40061<br>Chapter 11<br>(Jointly Administered) |
| PPF GIN & WAREHOUSE, LLC, *et al.*,<br><br>Plaintiff,<br><br>vs.<br><br>NUTRIEN LTD. AND NUTRIEN AG SOLUTIONS, INC.<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Adv. Proc. No. 26-04067 |

**STIPULATION AND AGREED ORDER:**

**(I) REGARDING NOTICE OF POTENTIAL TAG-ALONG ACTION TO JUDICIAL PANEL ON MULTIDISTRICT LITIGATION;**

**(II) STAYING NUTRIEN LTD.'S AND NUTRIEN AG SOLUTIONS, INC.'S RESPONSIVE PLEADING DEADLINES PENDING RESOLUTION OF TRANSFER TO THE MDL ACTION;**

**(III) PRESERVING THE BANKRUPTCY COURT'S JURISDICTION OVER CLAIM ALLOWANCE, SETOFF, RECOUPMENT, EQUITABLE SUBORDINATION, SALE PROCEEDS, AND DISTRIBUTIONS; AND**

**(IV) MODIFYING THE AUTOMATIC STAY OF 11 U.S.C. § 362 ONLY TO THE LIMITED EXTENT NECESSARY**

**(RE: CASE NO. 26-40061, DOCKET NO. 144 AND ADV. NO. 26-04067 DOCKET NO. 1)**

PPF Gin & Warehouse, LLC, PPF Farms, LLC, and Pilgrim Land Management, LLC, Plaintiffs (collectively, the "Debtors" or the "Plaintiffs"), and Defendant Nutrien Ag Solutions,

Inc. ( "Nutrien"), enter into this Stipulation and Agreed Order. In light of the parties' agreement, as evidenced by the signatures of their respective counsel, the Court finds that the following Agreed Order should be entered.

As evidenced by the signatures of their respective counsel below, the Debtors and Nutrien stipulate and agree as follows:

1. On January 5, 2026, each of the Debtors listed below filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Bankruptcy Court").

| Debtor Name | Case Number |
|---|---|
| PPF Gin & Warehouse LLC | Case No. 26-40061 |
| PPF Farms LLC | Case No. 26-40062 |
| Pilgrim Land Management LLC | Case No. 26-40063 |

2. On January 23, 2026, the Bankruptcy Court entered an order in each of the cases jointly administering the three cases under Case No. 26-40061.

3. On May 4, 2026, Nutrien filed its proof of claim in each of the cases as set forth below (collectively, the "***Proof of Claim***").

| Case Number | Proof of Claim |
|---|---|
| 26-40061 | 16 |
| 26-40062 | 6 |
| 26-40063 | 7 |

4. Nutrien may amend the Proof of Claim, subject to all applicable deadlines, rules, and objections.

5. Debtors may object to any amended Proof of Claim filed by Nutrien, subject to all applicable deadlines, rules, and objections.

6. On June 16, 2026, the Debtors commenced the above-captioned adversary proceeding against Nutrien Ltd. and Nutrien Ag Solutions, Inc. by filing the Debtors' Original Complaint and Objection to Claim (Docket No. 1) (the "Complaint").

7. On or about June 25, 2026, Debtors effectuated service of the Complaint upon Nutrien Ag Solutions, Inc. To date, Debtors have not effectuated service of the Complaint upon Nutrien Ltd.

8. The current deadline for Nutrien Ltd. and Nutrien Ag Solutions, Inc. to respond to the Complaint is July 20, 2026. *See* Docket Nos. 4 and 5.

9. The Complaint asserts the following claims against Nutrien Ltd. and Nutrien Ag Solutions, Inc.:

   a. Count I: Violation of Section 1 of the Sherman Act under15 U.S.C. § 1;

   b. Count II: Damages and Equitable Relief under the Clayton Act, 15 U.S.C. §§ 15 and 26;

   c. Count III: Violation of the Texas Free Enterprise and Antitrust Act under Tex. Bus. & Com. Code § 15.21 (Counts I–III, collectively, the "Antitrust Claims");

   d. Count IV: Objection to Claim No. 16-1 under 11 U.S.C. §§ 502 and 506 and Fed. R. Bankr. P. 3007 and 7001;

   e. Count V: Setoff and Recoupment under 11 U.S.C. § 558 and other applicable law; and

   f. Count VI: Equitable Subordination under 11 U.S.C. § 510(c) (Counts IV–VI, collectively, the "Bankruptcy Claims").

10. The Antitrust Claims arise from Plaintiffs' direct purchases of nitrogen, phosphorus, and potassium fertilizers ("NPK Fertilizers") from Nutrien and allege that Nutrien, acting independently and in coordination with other NPK Fertilizer producers, participated in agreements, understandings, or coordinated conduct to fix, raise, maintain, or stabilize prices for NPK Fertilizers sold in the United States, including products sold directly to Plaintiffs. Complaint ¶¶ 1–2. The Bankruptcy Claims concern the allowance, amount, secured status, priority, treatment, setoff, recoupment, and potential subordination of Nutrien's Proof of Claim in the Debtors' Chapter 11 cases.

11. On March 19, 2026, a motion was filed with the Judicial Panel on Multidistrict Litigation ("JPML") pursuant to 28 U.S.C. § 1407, seeking to transfer and centralize related actions pending in various district courts involving one or more common questions of fact. Those related actions assert antitrust violations against Nutrien Ltd., Nutrien Ag Solutions, Inc., and other defendants, specifically that defendants entered into an unlawful agreement to fix the price of NPK Fertilizers. See MDL No. 3187, Docket No. 1.

12. On June 9, 2026, the JPML issued a transfer order centralizing those related actions in the United States District Court for the District of Kansas before the Honorable Eric F. Melgren (the "MDL Action"). See MDL No. 3187, Docket No. 177.

13. JPML Rule 1.1(i) defines a "potential tag-along action" as a "civil action filed in a district court other than the transferee court that involves common questions of fact with either (1) actions on a pending motion to transfer to create an MDL or

(2) actions previously transferred to an existing MDL, and which the Panel would consider transferring under Section 1407 ".

14. The Antitrust Claims involve questions of fact common to the claims asserted in the MDL Action and may constitute potential tag-along claims. The Bankruptcy Claims, however, are distinct bankruptcy causes of action and contested matters concerning the allowance and treatment of Nutrien's Proof of Claim, the Debtors' rights of setoff and recoupment, equitable subordination, the validity and extent of asserted liens, and distributions from property of the estates or proceeds thereof.

15. Accordingly, Nutrien shall promptly notify the Clerk of the JPML of this potential tag-along action in accordance with JPML Rule 7.1(a).

16. Meanwhile, the Debtors continue to prosecute the underlying Bankruptcy Cases and to administer property of the estates.

a. The Debtors intend, among other things, to seek authority to sell assets of Pilgrim Land Management, LLC ("PLM"), which Nutrien asserts are subject to its liens, and to prosecute a Chapter 11 plan.

b. The Debtors expressly reserve all claims, objections, defenses, rights, remedies, and arguments concerning the Proof of Claim and any amended Proof of Claim, including, without limitation, all rights under 11 U.S.C. §§ 502, 506, 510(c), and 558; all rights of setoff and recoupment; all challenges to the amount, validity, priority, perfection, enforceability, and secured status of Nutrien's asserted claim and liens; and all rights concerning the retention, escrow, allocation, and distribution of proceeds from any sale of PLM property (collectively, the "Debtors' Reserved Bankruptcy Rights").

c. Nutrien reserves all claims, interests, rights, remedies, and defenses concerning its Proof of Claim and its participation in the Bankruptcy Cases (collectively, the "Nutrien Reserved Bankruptcy Rights").

d. The parties intend that only the Antitrust Claims be transferred to the MDL Action for coordinated or consolidated pretrial proceedings. The parties do not consent to adjudication of the Bankruptcy Claims by the MDL court and intend that the Bankruptcy Court retain jurisdiction over the Bankruptcy Claims and all matters concerning allowance and treatment of the Proof of Claim, sale proceeds, and distributions.

e. Accordingly, the Debtors and Nutrien request entry of the following orders to facilitate transfer of the Antitrust Claims while preserving the Bankruptcy Court's jurisdiction over the Bankruptcy Claims and the parties' respective reserved rights.

**IT IS THEREFORE ORDERED THAT:**

1. The foregoing stipulations are approved as evidencing the agreement of the Debtors and Nutrien.

2. Within two (2) business days after entry of this Agreed Order, Nutrien Ltd. and Nutrien Ag Solutions, Inc. shall file a Notice of Potential Tag-Along Action with the JPML and shall provide the Debtors with a copy of the filed notice.

3. Upon issuance and finalization of a conditional transfer order, the Antitrust Claims may be transferred to the United States District Court for the District of Kansas for coordinated or consolidated pretrial proceedings in the MDL Action. Nothing in this Agreed Order constitutes consent to the transfer or adjudication of the Bankruptcy Claims by the MDL court.

4. All deadlines for Nutrien Ltd. and Nutrien Ag Solutions, Inc. to answer, move, or otherwise respond to the Complaint are stayed pending further order of the Bankruptcy Court or the MDL court, as applicable. Nutrien shall not be deemed in default during such stay.

5. Nutrien may continue to participate in the Bankruptcy Cases to assert or protect the Nutrien Reserved Bankruptcy Rights, including, without limitation:

   a. maintaining any rights arising under orders previously entered in the Bankruptcy Cases, subject to the Debtors' Reserved Bankruptcy Rights;

   b. objecting to any sale or sale-related matter and asserting a right to adequate protection or to a distribution from sale proceeds, subject to Paragraphs 8 and 9 below;

   c. asserting any defense based on releases contained in prepetition loan documents, without prejudice to the Debtors' rights to dispute the existence, scope, validity, enforceability, or effect of any such release; and

   d. objecting to any disclosure statement or Chapter 11 plan.

6. The Bankruptcy Court shall retain jurisdiction to determine the Bankruptcy Claims and all issues concerning the Proof of Claim, including its allowance, amount, classification, secured status, priority, validity, perfection, enforceability, treatment, setoff, recoupment, equitable subordination, and entitlement to any distribution from estate property or sale proceeds.

7. If the JPML transfers the entire Adversary Proceeding to the MDL Action (inclusive of both the Antitrust and Bankruptcy Claims), the parties shall promptly and jointly request that the JPML separate and simultaneously remand the Bankruptcy Claims to the Eastern District of Texas pursuant to 28 U.S.C. § 1407(a) and applicable JPML Rules. Pending such separation and remand, the Bankruptcy

Claims shall be stayed. In addition, while the Bankruptcy Claims are pending in the MDL Action neither party shall contend that this Agreed Order and Stipulation constitute consent to the adjudication in the MDL Action.

8. Nothing in this Agreed Order waives, limits, releases, adjudicates, or impairs the Debtors' Reserved Bankruptcy Rights. Without limiting the foregoing, the Debtors may object to any Proof of Claim filed by Nutrien; prosecute setoff and recoupment under 11 U.S.C. § 558 and applicable law; seek disallowance, reduction, reclassification, or equitable subordination of Nutrien's claim; challenge Nutrien's asserted liens; and seek escrow or other preservation of sale proceeds pending resolution of the Antitrust Claims and Bankruptcy Claims.

9. Nothing in this Agreed Order waives, limits, releases, adjudicates, or impairs Nutrien's Reserved Bankruptcy Rights, including, without limitation, with respect to any objection by the Debtors or any other party to any Proof of Claim filed by Nutrien; any assertion by the Debtors to a right of setoff and recoupment; any action seeking the disallowance, reduction, reclassification , or equitable subordination of Nutrien's claims; any challenge to Nutrien's asserted liens; and the Debtors' actions to seek escrow or other preservation of sale proceeds pending resolution of the Antitrust Claims and Bankruptcy Claims.

10. No finding, stipulation, transfer, or order entered in connection with the JPML proceedings or the MDL Action shall, by itself, determine the allowance, secured status, priority, or treatment of Nutrien's Proof of Claim or Nutrien's entitlement to a distribution. Any factual findings, judgment, settlement, or damages determination in the MDL Action may be asserted by either party in the Bankruptcy Court, subject to all objections, defenses, and applicable principles of preclusion.

11. Until the Antitrust Claims and Bankruptcy Claims are resolved by settlement approved by the Bankruptcy Court or by final order, no portion of the net cash proceeds from a sale of PLM property that Nutrien claims would otherwise be distributable to it (the "Disputed Nutrien Proceeds") shall be distributed to Nutrien absent the Debtors' written consent or further order of the Bankruptcy Court after notice and a hearing; provided, however, Nutrien may assert in the Bankruptcy Case and the Debtor may dispute in the Bankruptcy Case whether release language contained in the Nutrien loan documents requires any delay in distribution of the net proceeds of a sale pending resolution of the Bankruptcy Claims (the "Release Dispute")..

12. The Disputed Nutrien Proceeds shall be held in a segregated, interest-bearing escrow account or in the registry of the Bankruptcy Court. Nutrien's asserted liens, if any, shall attach to the Disputed Nutrien Proceeds with the same validity, extent, priority, and enforceability that such liens had against the sold property immediately before the sale, subject in all respects to the Debtors' Reserved Bankruptcy Rights and the rights of all other parties in interest. Interest earned shall follow the principal. This Agreed Order does not determine the amount of the Disputed Nutrien Proceeds or the rights of any nonparty.

13. Nutrien may amend the Proof of Claim, subject to all applicable deadlines, rules, and objections.

14. The Debtors may object to any amended Proof of Claim filed by Nutrien and may assert all claims, defenses, setoff, recoupment, subordination, and lien challenges, subject to all applicable deadlines, rules, and objections and permitted by applicable law.

15. The Debtors or Nutrien may seek to clarify or modify this Agreed Order for good cause after notice and a hearing; provided, however, that no modification shall be inferred from silence, inaction, or participation in the Bankruptcy Cases or MDL Action.

16. This Agreed Order shall be entered in the Bankruptcy Cases and the Adversary Proceeding.

17. The automatic stay of 11 U.S.C. § 362 is modified solely to the limited extent necessary for Nutrien to file the Notice of Potential Tag-Along Action, participate in proceedings before the JPML and in the MDL Action, and take the actions expressly authorized by this Agreed Order. Except as expressly stated, the automatic stay remains in full force and effect. Nothing in this Agreed Order authorizes Nutrien to collect or enforce its claim, exercise control over estate property or sale proceeds, obtain a distribution, enforce any lien, or take any other action against the Debtors or property of the estates without further order of the Bankruptcy Court.

Signed on 8/4/2026

Brenda T. Rhoades KC

HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE

**AGREED:**

*/s/ Brandon J. Tittle**
Brandon J. Tittle
**TITTLE SANTIAGO, PLLC**
1125 Legacy Dr., Ste. 230
Frisco, Texas 75034
Telephone: (972) 213-2316
btittle@tittlelawpllc.com

ATTORNEYS FOR
PPF GIN & WAREHOUSE LLC,
PPF FARMS LLC, AND
PILGRIM LAND MANAGEMENT LLC
PLAINTIFFS

***{continued on following sheet}***

JAMESON AND DUNAGAN, P.C.

By: *\/s/ Matthew C. Jameson*
MATTHEW C. JAMESON
Texas Bar No. 24046148
Email: mcj@jdlawtx.com
5429 LBJ Freeway, Suite 300
Dallas, Texas 75240
(214) 369-6422 - phone
(214) 369-9175 - fax

CONDON TOBIN SLADEK
SPARKS NERENBERG, PLLC

By: */s/ Jeff Carruth*
JEFF CARRUTH (TX SBN: 24001846)
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3834
Fax: (214) 691-6311
E-mail: jcarruth@condontobin.com

- and -

*/s/ Eddie Hasdoo**
Eddie Hasdoo
**JONES DAY**
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 269-4214
ehasdoo@jonesday.com

ATTORNEYS FOR
NUTRIEN AG SOLUTIONS, INC.
DEFENDANTS

** Signature by permission by /s/ Jeff Carruth*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE:<br><br>PPF GIN & WAREHOUSE, LLC, *et al.*,<br>Debtors. | §<br>§<br>§<br>§<br>§<br>§ | Case No. 26-40061<br>Chapter 11<br>(Jointly Administered) |
| PPF GIN & WAREHOUSE, LLC, *et al.*,<br><br>Plaintiff,<br><br>vs.<br><br>NUTRIEN LTD. AND NUTRIEN AG SOLUTIONS, INC.<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Adv. Proc. No. 26-04067 |

**STIPULATION AND AGREED ORDER:**

**(I) REGARDING NOTICE OF POTENTIAL TAG-ALONG ACTION TO JUDICIAL PANEL ON MULTIDISTRICT LITIGATION;**

**(II) STAYING NUTRIEN LTD.'S AND NUTRIEN AG SOLUTIONS, INC.'S RESPONSIVE PLEADING DEADLINES PENDING RESOLUTION OF TRANSFER TO THE MDL ACTION;**

**(III) PRESERVING THE BANKRUPTCY COURT'S JURISDICTION OVER CLAIM ALLOWANCE, SETOFF, RECOUPMENT, EQUITABLE SUBORDINATION, SALE PROCEEDS, AND DISTRIBUTIONS; AND**

**(IV) MODIFYING THE AUTOMATIC STAY OF 11 U.S.C. § 362 ONLY TO THE LIMITED EXTENT NECESSARY**

**(RE: CASE NO. 26-40061, DOCKET NO. 144 AND ADV. NO. 26-04067 DOCKET NO. 1)**

PPF Gin & Warehouse, LLC, PPF Farms, LLC, and Pilgrim Land Management, LLC, Plaintiffs (collectively, the "Debtors" or the "Plaintiffs"), and Defendant Nutrien Ag Solutions,

Inc. ( "Nutrien"), enter into this Stipulation and Agreed Order. In light of the parties' agreement, as evidenced by the signatures of their respective counsel, the Court finds that the following Agreed Order should be entered.

As evidenced by the signatures of their respective counsel below, the Debtors and Nutrien stipulate and agree as follows:

1. On January 5, 2026, each of the Debtors listed below filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Bankruptcy Court").

| Debtor Name | Case Number |
|---|---|
| PPF Gin & Warehouse LLC | Case No. 26-40061 |
| PPF Farms LLC | Case No. 26-40062 |
| Pilgrim Land Management LLC | Case No. 26-40063 |

2. On January 23, 2026, the Bankruptcy Court entered an order in each of the cases jointly administering the three cases under Case No. 26-40061.

3. On May 4, 2026, Nutrien filed its proof of claim in each of the cases as set forth below (collectively, the "***Proof of Claim***").

| Case Number | Proof of Claim |
|---|---|
| 26-40061 | 16 |
| 26-40062 | 6 |
| 26-40063 | 7 |

4. Nutrien may amend the Proof of Claim, subject to all applicable deadlines, rules, and objections.

5. Debtors may object to any amended Proof of Claim filed by Nutrien, subject to all applicable deadlines, rules, and objections.

6. On June 16, 2026, the Debtors commenced the above-captioned adversary proceeding against Nutrien Ltd. and Nutrien Ag Solutions, Inc. by filing the Debtors' Original Complaint and Objection to Claim (Docket No. 1) (the "Complaint").

7. On or about June 25, 2026, Debtors effectuated service of the Complaint upon Nutrien Ag Solutions, Inc. To date, Debtors have not effectuated service of the Complaint upon Nutrien Ltd.

8. The current deadline for Nutrien Ltd. and Nutrien Ag Solutions, Inc. to respond to the Complaint is July 20, 2026. *See* Docket Nos. 4 and 5.

9. The Complaint asserts the following claims against Nutrien Ltd. and Nutrien Ag Solutions, Inc.:

a. Count I: Violation of Section 1 of the Sherman Act under15 U.S.C. § 1;

b. Count II: Damages and Equitable Relief under the Clayton Act, 15 U.S.C. §§ 15 and 26;

c. Count III: Violation of the Texas Free Enterprise and Antitrust Act under Tex. Bus. & Com. Code § 15.21 (Counts I–III, collectively, the "Antitrust Claims");

d. Count IV: Objection to Claim No. 16-1 under 11 U.S.C. §§ 502 and 506 and Fed. R. Bankr. P. 3007 and 7001;

e. Count V: Setoff and Recoupment under 11 U.S.C. § 558 and other applicable law; and

f. Count VI: Equitable Subordination under 11 U.S.C. § 510(c) (Counts IV–VI, collectively, the "Bankruptcy Claims").

10. The Antitrust Claims arise from Plaintiffs' direct purchases of nitrogen, phosphorus, and potassium fertilizers ("NPK Fertilizers") from Nutrien and allege that Nutrien, acting independently and in coordination with other NPK Fertilizer producers, participated in agreements, understandings, or coordinated conduct to fix, raise, maintain, or stabilize prices for NPK Fertilizers sold in the United States, including products sold directly to Plaintiffs. Complaint ¶¶ 1–2. The Bankruptcy Claims concern the allowance, amount, secured status, priority, treatment, setoff, recoupment, and potential subordination of Nutrien's Proof of Claim in the Debtors' Chapter 11 cases.

11. On March 19, 2026, a motion was filed with the Judicial Panel on Multidistrict Litigation ("JPML") pursuant to 28 U.S.C. § 1407, seeking to transfer and centralize related actions pending in various district courts involving one or more common questions of fact. Those related actions assert antitrust violations against Nutrien Ltd., Nutrien Ag Solutions, Inc., and other defendants, specifically that defendants entered into an unlawful agreement to fix the price of NPK Fertilizers. See MDL No. 3187, Docket No. 1.

12. On June 9, 2026, the JPML issued a transfer order centralizing those related actions in the United States District Court for the District of Kansas before the Honorable Eric F. Melgren (the "MDL Action"). See MDL No. 3187, Docket No. 177.

13. JPML Rule 1.1(i) defines a "potential tag-along action" as a "civil action filed in a district court other than the transferee court that involves common questions of fact with either (1) actions on a pending motion to transfer to create an MDL or

(2) actions previously transferred to an existing MDL, and which the Panel would consider transferring under Section 1407 ".

14. The Antitrust Claims involve questions of fact common to the claims asserted in the MDL Action and may constitute potential tag-along claims. The Bankruptcy Claims, however, are distinct bankruptcy causes of action and contested matters concerning the allowance and treatment of Nutrien's Proof of Claim, the Debtors' rights of setoff and recoupment, equitable subordination, the validity and extent of asserted liens, and distributions from property of the estates or proceeds thereof.

15. Accordingly, Nutrien shall promptly notify the Clerk of the JPML of this potential tag-along action in accordance with JPML Rule 7.1(a).

16. Meanwhile, the Debtors continue to prosecute the underlying Bankruptcy Cases and to administer property of the estates.

a. The Debtors intend, among other things, to seek authority to sell assets of Pilgrim Land Management, LLC ("PLM"), which Nutrien asserts are subject to its liens, and to prosecute a Chapter 11 plan.

b. The Debtors expressly reserve all claims, objections, defenses, rights, remedies, and arguments concerning the Proof of Claim and any amended Proof of Claim, including, without limitation, all rights under 11 U.S.C. §§ 502, 506, 510(c), and 558; all rights of setoff and recoupment; all challenges to the amount, validity, priority, perfection, enforceability, and secured status of Nutrien's asserted claim and liens; and all rights concerning the retention, escrow, allocation, and distribution of proceeds from any sale of PLM property (collectively, the "Debtors' Reserved Bankruptcy Rights").

c. Nutrien reserves all claims, interests, rights, remedies, and defenses concerning its Proof of Claim and its participation in the Bankruptcy Cases (collectively, the "Nutrien Reserved Bankruptcy Rights").

d. The parties intend that only the Antitrust Claims be transferred to the MDL Action for coordinated or consolidated pretrial proceedings. The parties do not consent to adjudication of the Bankruptcy Claims by the MDL court and intend that the Bankruptcy Court retain jurisdiction over the Bankruptcy Claims and all matters concerning allowance and treatment of the Proof of Claim, sale proceeds, and distributions.

e. Accordingly, the Debtors and Nutrien request entry of the following orders to facilitate transfer of the Antitrust Claims while preserving the Bankruptcy Court's jurisdiction over the Bankruptcy Claims and the parties' respective reserved rights.

**IT IS THEREFORE ORDERED THAT:**

1. The foregoing stipulations are approved as evidencing the agreement of the Debtors and Nutrien.

2. Within two (2) business days after entry of this Agreed Order, Nutrien Ltd. and Nutrien Ag Solutions, Inc. shall file a Notice of Potential Tag-Along Action with the JPML and shall provide the Debtors with a copy of the filed notice.

3. Upon issuance and finalization of a conditional transfer order, the Antitrust Claims may be transferred to the United States District Court for the District of Kansas for coordinated or consolidated pretrial proceedings in the MDL Action. Nothing in this Agreed Order constitutes consent to the transfer or adjudication of the Bankruptcy Claims by the MDL court.

4. All deadlines for Nutrien Ltd. and Nutrien Ag Solutions, Inc. to answer, move, or otherwise respond to the Complaint are stayed pending further order of the Bankruptcy Court or the MDL court, as applicable. Nutrien shall not be deemed in default during such stay.

5. Nutrien may continue to participate in the Bankruptcy Cases to assert or protect the Nutrien Reserved Bankruptcy Rights, including, without limitation:

    a. maintaining any rights arising under orders previously entered in the Bankruptcy Cases, subject to the Debtors' Reserved Bankruptcy Rights;

    b. objecting to any sale or sale-related matter and asserting a right to adequate protection or to a distribution from sale proceeds, subject to Paragraphs 8 and 9 below;

    c. asserting any defense based on releases contained in prepetition loan documents, without prejudice to the Debtors' rights to dispute the existence, scope, validity, enforceability, or effect of any such release; and

    d. objecting to any disclosure statement or Chapter 11 plan.

6. The Bankruptcy Court shall retain jurisdiction to determine the Bankruptcy Claims and all issues concerning the Proof of Claim, including its allowance, amount, classification, secured status, priority, validity, perfection, enforceability, treatment, setoff, recoupment, equitable subordination, and entitlement to any distribution from estate property or sale proceeds.

7. If the JPML transfers the entire Adversary Proceeding to the MDL Action (inclusive of both the Antitrust and Bankruptcy Claims), the parties shall promptly and jointly request that the JPML separate and simultaneously remand the Bankruptcy Claims to the Eastern District of Texas pursuant to 28 U.S.C. § 1407(a) and applicable JPML Rules. Pending such separation and remand, the Bankruptcy

Claims shall be stayed. In addition, while the Bankruptcy Claims are pending in the MDL Action neither party shall contend that this Agreed Order and Stipulation constitute consent to the adjudication in the MDL Action.

8. Nothing in this Agreed Order waives, limits, releases, adjudicates, or impairs the Debtors' Reserved Bankruptcy Rights. Without limiting the foregoing, the Debtors may object to any Proof of Claim filed by Nutrien; prosecute setoff and recoupment under 11 U.S.C. § 558 and applicable law; seek disallowance, reduction, reclassification, or equitable subordination of Nutrien's claim; challenge Nutrien's asserted liens; and seek escrow or other preservation of sale proceeds pending resolution of the Antitrust Claims and Bankruptcy Claims.

9. Nothing in this Agreed Order waives, limits, releases, adjudicates, or impairs Nutrien's Reserved Bankruptcy Rights, including, without limitation, with respect to any objection by the Debtors or any other party to any Proof of Claim filed by Nutrien; any assertion by the Debtors to a right of setoff and recoupment; any action seeking the disallowance, reduction, reclassification , or equitable subordination of Nutrien's claims; any challenge to Nutrien's asserted liens; and the Debtors' actions to seek escrow or other preservation of sale proceeds pending resolution of the Antitrust Claims and Bankruptcy Claims.

10. No finding, stipulation, transfer, or order entered in connection with the JPML proceedings or the MDL Action shall, by itself, determine the allowance, secured status, priority, or treatment of Nutrien's Proof of Claim or Nutrien's entitlement to a distribution. Any factual findings, judgment, settlement, or damages determination in the MDL Action may be asserted by either party in the Bankruptcy Court, subject to all objections, defenses, and applicable principles of preclusion.

11. Until the Antitrust Claims and Bankruptcy Claims are resolved by settlement approved by the Bankruptcy Court or by final order, no portion of the net cash proceeds from a sale of PLM property that Nutrien claims would otherwise be distributable to it (the "Disputed Nutrien Proceeds") shall be distributed to Nutrien absent the Debtors' written consent or further order of the Bankruptcy Court after notice and a hearing; provided, however, Nutrien may assert in the Bankruptcy Case and the Debtor may dispute in the Bankruptcy Case whether release language contained in the Nutrien loan documents requires any delay in distribution of the net proceeds of a sale pending resolution of the Bankruptcy Claims (the "Release Dispute")..

12. The Disputed Nutrien Proceeds shall be held in a segregated, interest-bearing escrow account or in the registry of the Bankruptcy Court. Nutrien's asserted liens, if any, shall attach to the Disputed Nutrien Proceeds with the same validity, extent, priority, and enforceability that such liens had against the sold property immediately before the sale, subject in all respects to the Debtors' Reserved Bankruptcy Rights and the rights of all other parties in interest. Interest earned shall follow the principal. This Agreed Order does not determine the amount of the Disputed Nutrien Proceeds or the rights of any nonparty.

13. Nutrien may amend the Proof of Claim, subject to all applicable deadlines, rules, and objections.

14. The Debtors may object to any amended Proof of Claim filed by Nutrien and may assert all claims, defenses, setoff, recoupment, subordination, and lien challenges, subject to all applicable deadlines, rules, and objections and permitted by applicable law.

15. The Debtors or Nutrien may seek to clarify or modify this Agreed Order for good cause after notice and a hearing; provided, however, that no modification shall be inferred from silence, inaction, or participation in the Bankruptcy Cases or MDL Action.

16. This Agreed Order shall be entered in the Bankruptcy Cases and the Adversary Proceeding.

17. The automatic stay of 11 U.S.C. § 362 is modified solely to the limited extent necessary for Nutrien to file the Notice of Potential Tag-Along Action, participate in proceedings before the JPML and in the MDL Action, and take the actions expressly authorized by this Agreed Order. Except as expressly stated, the automatic stay remains in full force and effect. Nothing in this Agreed Order authorizes Nutrien to collect or enforce its claim, exercise control over estate property or sale proceeds, obtain a distribution, enforce any lien, or take any other action against the Debtors or property of the estates without further order of the Bankruptcy Court.

Signed on 8/4/2026

Brenda T. Rhoades KC

HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE

**AGREED:**

*/s/ Brandon J. Tittle**

Brandon J. Tittle
**TITTLE SANTIAGO, PLLC**
1125 Legacy Dr., Ste. 230
Frisco, Texas 75034
Telephone: (972) 213-2316
btittle@tittlelawpllc.com

ATTORNEYS FOR
PPF GIN & WAREHOUSE LLC,
PPF FARMS LLC, AND
PILGRIM LAND MANAGEMENT LLC
PLAINTIFFS

***{continued on following sheet}***

JAMESON AND DUNAGAN, P.C.

By: */s/ Matthew C. Jameson*
MATTHEW C. JAMESON
Texas Bar No. 24046148
Email: mcj@jdlawtx.com
5429 LBJ Freeway, Suite 300
Dallas, Texas 75240
(214) 369-6422 - phone
(214) 369-9175 - fax

CONDON TOBIN SLADEK
SPARKS NERENBERG, PLLC

By: */s/ Jeff Carruth*
JEFF CARRUTH (TX SBN: 24001846)
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3834
Fax: (214) 691-6311
E-mail: jcarruth@condontobin.com

- and -

*/s/ Eddie Hasdoo**
Eddie Hasdoo
**JONES DAY**
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 269-4214
ehasdoo@jonesday.com

ATTORNEYS FOR
NUTRIEN AG SOLUTIONS, INC.
DEFENDANTS

** Signature by permission by /s/ Jeff Carruth*

United States Bankruptcy Court

Eastern District of Texas

PPF Gin & Warehouse, LLC,
Plaintiff

Adv. Proc. No. 26-04067-btr

Nutrien Ag Solutions, Inc.,
Defendant

# CERTIFICATE OF NOTICE

District/off: 0540-4 User: admin Page 1 of 2

Date Rcvd: Aug 04, 2026 Form ID: pdf401 Total Noticed: 11

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Aug 06, 2026:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | PPF Farms, LLC, 700 FM 1335, Cooper, TX 75432-5108 |
| db | + | PPF Gin & Warehouse, LLC, 700 FM 1335, Cooper, TX 75432-5108 |
| db | + | Pilgrim Land Management, LLC, 700 FM 1335, Cooper, TX 75432-5108 |
| aty | + | Phelps Dunbar, 2000 McKinney Ave., Ste. 2050, Dallas, TX 75201-2011 |
| dft | | Nutrien Ltd., Suite 1700, 211 19th Street East, Saskatoo, SK S7K 5R6, Canada |

TOTAL: 5

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| ust | + | Email/Text: ustpregion06.ty.ecf@usdoj.gov | Aug 05 2026 02:05:00 | U.S. Trustee, Office of the U.S. Trustee, 110 N. College Ave., Ste 300, Tyler, TX 75702-7231 |
| ust | + | Email/Text: USTPRegion13.LR.ECF@usdoj.gov | Aug 05 2026 02:04:00 | U.S. Trustee (ust), Office of U.S. Trustee, 200 W Capitol, Ste. 1200, Little Rock, AR 72201-3618 |
| ust | + | Email/Text: ustpregion06.ty.ecf@usdoj.gov | Aug 05 2026 02:05:00 | US Trustee, Office of the U.S. Trustee, 110 N. College Ave., Suite 300, Tyler, TX 75702-7231 |
| ust | + | Email/Text: ustpregion07.hu.ecf@usdoj.gov | Aug 05 2026 02:05:00 | US Trustee, Office of the US Trustee, 515 Rusk Ave, Ste 3516, Houston, TX 77002-2604 |
| ust | + | Email/Text: ustpregion06.da.ecf@usdoj.gov | Aug 05 2026 02:05:00 | United States Trustee, 1100 Commerce Street, Room 976, Dallas, TX 75242-0996 |
| dft | + | Email/Text: Loveland.Collections@nutrien.com | Aug 05 2026 02:05:00 | Nutrien Ag Solutions, Inc., 3005 Rocky Mountain Avenue, Loveland, CO 80538-9001 |

TOTAL: 6

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| ust | *+ | US Trustee, Office of the US Trustee, 515 Rusk Ave, Ste 3516, Houston, TX 77002-2604 |
| ust | *+ | US Trustee, Office of the US Trustee, 515 Rusk Ave, Ste 3516, Houston, TX 77002-2604 |
| ust | *+ | US Trustee, Office of the US Trustee, 515 Rusk Ave, Ste 3516, Houston, TX 77002-2604 |
| ust | *+ | US Trustee, Office of the US Trustee, 515 Rusk Ave, Ste 3516, Houston, TX 77002-2604 |
| ust | *+ | United States Trustee, 1100 Commerce Street, Room 976, Dallas, TX 75242-0996 |
| ust | *+ | United States Trustee, 1100 Commerce Street, Room 976, Dallas, TX 75242-0996 |
| ust | *+ | United States Trustee, 1100 Commerce Street, Room 976, Dallas, TX 75242-0996 |
| pla | *+ | PPF Farms, LLC, 700 FM 1335, Cooper, TX 75432-5108 |
| pla | *+ | PPF Gin & Warehouse, LLC, 700 FM 1335, Cooper, TX 75432-5108 |
| pla | *+ | Pilgrim Land Management, LLC, 700 FM 1335, Cooper, TX 75432-5108 |

TOTAL: 0 Undeliverable, 10 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Aug 06, 2026 Signature: /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on August 4, 2026 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Brandon John Tittle | on behalf of Plaintiff PPF Gin & Warehouse LLC btittle@tittlesantiago.com |
| Brandon John Tittle | on behalf of Plaintiff Pilgrim Land Management LLC btittle@tittlesantiago.com |
| Brandon John Tittle | on behalf of Plaintiff PPF Farms LLC btittle@tittlesantiago.com |
| Jeff Carruth | on behalf of Defendant Nutrien Ltd. jcarruth@condontobin.com jcarruth@aol.com;jsteele@condontobin.com;atty_carruth@trustesolutions.com;ATTY_CARRUTH@bluestylus.com;carruthjr87698@notify.bestcase.com;jcarruth@ecf.courtdrive.com;jsteele@condontobin.com |
| Jeff Carruth | on behalf of Defendant Nutrien Ag Solutions Inc. jcarruth@condontobin.com, jcarruth@aol.com;jsteele@condontobin.com;atty_carruth@trustesolutions.com;ATTY_CARRUTH@bluestylus.com;carruthjr87698@notify.bestcase.com;jcarruth@ecf.courtdrive.com;jsteele@condontobin.com |
| Manolo R Santiago | on behalf of Plaintiff Pilgrim Land Management LLC msantiago@tittlelawpllc.com, HerrinLawPLLC@jubileebk.net |
| Manolo R Santiago | on behalf of Plaintiff PPF Gin & Warehouse LLC msantiago@tittlelawpllc.com, HerrinLawPLLC@jubileebk.net |
| Manolo R Santiago | on behalf of Plaintiff PPF Farms LLC msantiago@tittlelawpllc.com, HerrinLawPLLC@jubileebk.net |

TOTAL: 8

**UNITED STATES JUDICIAL PANEL**
**on**
**MULTIDISTRICT LITIGATION**

**IN RE: NITROGEN, PHOSPHORUS, AND POTASSIUM (NPK) FERTILIZER ANTITRUST LITIGATION** **MDL No. 3187**

(SEE ATTACHED SCHEDULE)

**CONDITIONAL TRANSFER ORDER (CTO−4)**
**AND SIMULTANEOUS SEPARATION AND REMAND OF CERTAIN CLAIMS**

On June 9, 2026, the Panel transferred 4 civil action(s) to the United States District Court for the District of Kansas for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* MDL 3187, ECF No. 177 (J.P.M.L. 2026). Since that time, 24 additional action(s) have been transferred to the District of Kansas. With the consent of that court, all such actions have been assigned to the Honorable Eric F. Melgren.

It appears that the action on this conditional transfer is comprised of antitrust claims (Counts I–III), which involve questions of fact that are common to the actions previously transferred to the District of Kansas and assigned to Judge Melgren, and bankruptcy claims (Counts IV–VI), which do not relate to the subject matter of the MDL. The Bankruptcy Court has approved a stipulation by the parties to separate the antitrust claims and transfer those claims for further pretrial proceedings in the MDL.

Pursuant to Rule 7.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, the action listed on the attached schedule is transferred under 28 U.S.C. § 1407 to the District of Kansas for the reasons stated in the order of June 9, 2026, and, with the consent of that court, assigned to the Honorable Eric F. Melgren.

The bankruptcy claims (Counts IV, V, and VI) are hereby separated and simultaneously remanded under 28 U.S.C. § 1407(a), to the Bankruptcy Court of the Eastern District of Texas.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the District of Kansas. The transmittal of this order to said Clerk shall be stayed 7 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 7-day period, the stay will be continued until further order of the Panel.

Inasmuch as no objection is pending at this time, the stay is lifted.

Aug 19, 2026

CLERK'S OFFICE
UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FOR THE PANEL:

Jessica D. Birnbaum

Jessica D. Birnbaum
Clerk of the Panel

**IN RE: NITROGEN, PHOSPHORUS, AND POTASSIUM (NPK) FERTILIZER ANTITRUST LITIGATION**

MDL No. 3187

**SCHEDULE CTO−4 − TAG−ALONG ACTIONS**

| DIST | DIV. | C.A.NO. | CASE CAPTION |
|---|---|---|---|
| TEXAS EASTERN | | | |
| TXE | 4 | Bky. Adv. No. 4:26−04067 | PPF Gin & Warehouse, LLC and PPF Farms, LLC |